Jonathan R. Howden (SBN: 97022)
jhowden@winston.com
Eva C. Chan (SBN: 233289)
echan@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Martha Boersch (SBN: 126569)
mboersch@jonesday.com
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104
Telephone:   (415) 626-3939
Facsimile:   (415) 875-5700

Attorneys for Defendants
MENDEL BEKER AND NEWCON INTERNATIONAL LTD.

William L. Osterhoudt (SBN: 0430321)
osterhoudt@aol.com
Dolores Osterhoudt (SBN: 215537)
LAW OFFICES OF WILLIAM L. OSTERHOUDT
135 Belvedere Street
San Francisco, CA 94117
Telephone:   (415) 664-4600
Facsimile:   (415) 664-4691

Attorneys for Defendant ARIE PRILIK

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br> vs. <br> MENDEL BEKER, <br> a/k/a Michael Beker, <br> a/k/a Mikhail Lvovich, <br> ARIE PRILIK and <br> NEWCON INTERNATIONAL LTD. <br>     Defendants. | **Case No. CR 07 0765 MHP** <br><br> **DEFENDANTS' MOTION TO ADMIT MOSCOW COURT RECORDS** <br><br> Date:   November 17, 2010 <br> Time:   2:30 P.M. <br> Place:   Courtroom 18 |

I.   INTRODUCTION

The defendants seek to admit into evidence five Russian court opinions from three separate Moscow civil courts. The court opinions deal with three civil actions commenced by Infostyle, the Moscow based importer of the night vision goggles that ATN sold to ITE to fulfill its obligations under the Battalion Set II contract with TACOM. These court opinions are highly relevant and vital to the defense for several separate reasons. First, they are key impeachment evidence for use with the government's key witness, Dmitry Rocklin, because they establish conclusively that Rocklin made false statements to ITE and TACOM regarding the quality of his product. Second, the opinions serve to rebut the inference that the problems that ATN's suppliers encountered with Russian Customs in August 2005, were somehow unlawful or illicit. Third, the court records are important corroborating evidence of the defendants' intent and state of mind in all of the recorded calls with Rocklin and the TACOM representative, Derek McAleer.

The court opinions are admissible as foreign public documents under Rule 902(3) FRE or under Rule 901. As official records, they are admissible pursuant to Rule 803(8) FRE as public records. In the alternative, they are admissible under Rule 807, the Residual Exception, as having equivalent circumstantial guarantees of trustworthiness.

II.   BACKGROUND

The defendants seek to admit the Moscow court opinions for the reasons previously stated. They do not require expert testimony to explain their contents (apart from their authenticity). They speak for themselves. But what they state is vital to the defense.

In August 2005, shortly before Dmitry Rocklin began tape recording his calls with the defendants, he complained to the FBI that the defendants were causing Russian customs to interfere with his suppliers in Russia. The government currently is seeking to admit excerpts of the recorded calls that they assert support this contention. The Russian court records explain in great detail the genesis and nature of the dispute between ATN's suppliers and Russian Customs. The court opinions state the following:

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

In the summer of 2005, ATN was using a company called Infostyle to ship the goggles from Moscow to San Francisco. In order to ship night vision goggles out of Russia without a permit, the goggles had to fall below certain quality criteria. One of the key quality criteria is photocathode sensitivity. Russian regulations state that the maximum permissible photocathode sensitivity for exporting night vision equipment without a license is 350 ma/lm (microamperes per lumen). Russian Customs inspected three different shipments of the goggles being sent to ATN in San Francisco, and in each instance determined that the image intensifier tubes might exceed the maximum permissible quality. Customs eventually allowed the shipments to be sent to ATN, but imposed fines on the export company. The export company (Infostyle) eventually brought three separate actions contesting the fines. Each of the Russian courts hearing the matter, engaged in an in depth discussion of the technical specifications of the tubes, the Russian export requirements and the history of Russian Customs attempts to regulate these shipments, including an earlier phase of the investigation in Siberia, from where the goggles originally were being exported. After several years of litigation and separate appeals, the Moscow courts eventually found that the goggles were of a low enough quality that they could be exported without export licenses and the fines were overturned.

Among other things, the courts all found the following facts: 1, the recipient of the shipments was ATN in San Francisco; 2, the Image Intensifier Tubes at issue were Model EPM 214Gs manufactured by Ekran FEP; 3, the official technical specifications for that model stated that the photocathode sensitivity was between 250 and a maximum of 350 ma/lm. One of the opinions actually identifies by serial number, three of the tubes being shipped and also the serial numbers of the three pairs of goggles in which they were installed. Those three sets of serial numbers match those supplied by ATN to the United States Army in Iraq in one of ATN's many quality certifications.

ATN, in correspondence with TACOM and in its subcontract with ITE confirmed that: 1, Ekran FEP manufactured the image intensifier tubes it was using; 2, the model tube was the EPM 214G; and, 3, the photocathode sensitivity of the tubes was 500 minimum, and 650 typical – approximately twice as good as the actual specifications and well above the Russian Customs

3
**DEFENDANTS' MOTION TO ADMIT MOSCOW COURT RECORDS**

threshold requiring an export permit. And while photocathode sensitivity is not a contract specification in the Battalion Set II contract, it is nonetheless a material misrepresentation of a widely known and accepted measure of quality for an image intensifier tube. The reason that Rocklin and his confederates at ATN made this material misrepresentation is clear. As they well knew, the image intensifier tubes described by the Russian Courts could not possibly meet the FOM specification in the Battalion Set II contract. Therefore Rocklin and his confederates at ATN lied about the true photocathode sensitivity of the tubes they were providing. As noted, at least three of tubes and pairs of goggles can be traced from the Moscow shipments to the American Army in Iraq pursuant to ATN's subcontract with ITE.

The defense is entitled to impeach Mr. Rocklin with his false statements, and is further entitled to confront him with the evidence proving the lie. Further, the defense is entitled to rebut the government's insinuation of improper conduct by the defendants vis the Russian Customs investigation by demonstrating that there was a legitimate controversy regarding the requirement of an export permit for these goggles – a controversy that occupied several different Russian courts and involved numerous appeals and years of litigation before it was finally resolved, ironically in favor of the exporter because of the low quality of the exported goggles.

Finally, these court records corroborate the defendants' contention that all of their conversations with Dmitry Rocklin and Mr. Prilik's conversation with Derek McAleer all reflect their well founded belief that ATN could not meet the specifications of the Battalion Set II contract and would not be able to fulfill its requirements. Evidence of their intent and state of mind is crucial to their defense.

The defense has attempted to obtain certified and self-authenticating copies of these court opinions by submitting letters rogatory to the Russian authorities. We have been informed by the State Department that any response from the Russian authorities is highly unlikely. In fact, the State Department has referred us to their official web site which states that:

> In July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters. The Russian Federation refuses to serve letters of request from the United States for service of process presented under the terms of the 1965 Hague Service Convention or to execute letters rogatory requesting service of process transmitted via the diplomatic channel. The Russian

4
**DEFENDANTS' MOTION TO ADMIT MOSCOW COURT RECORDS**

> Federation also declines to give consideration to U.S. requests to obtain evidence. While the Department of State is prepared to transmit letters rogatory for service or evidence to Russian Authorities via the diplomatic channel, in the Department's experience, all such requests are returned unexecuted. Likewise requests sent directly by litigants to the Russian Central authority under the Hague Service Convention are returned unexecuted.
>
> \* \* \*
>
> Criminal defendants, or their defense counsel, who wish to request judicial assistance in obtaining evidence or in effecting service of documents abroad in connection with criminal matters may make such requests pursuant to letter rogatory….In the Department's experience however all such requests have been returned unexecuted for the reasons given in the summary section above.

The defense is prepared to proffer the following foundation for these opinions as provided by Igor Lesho, a duly licensed Russian attorney:

1. He has been practicing civil litigation in Moscow for over 21 years.
2. He has read the opinions in question.
3. He is familiar with each of the courts at issue and their functions within the Russian legal system.
4. Each of these courts maintain official websites which are publicly available.
5. The information regarding the status of cases is up to date and correct.
6. He can and does identify the website of each of these courts.
7. The cases in question were all finally resolved within the Russian legal system.
8. Each of the court opinions offered into evidence appear on the appropriate Russian court website.
9. Despite the public nature of the court opinions on the websites, the Russian court system does not permit non-parties or unauthorized third parties to obtain certified records of the proceedings.

III. <u>DISCUSSION</u>

The defendants may establish the admissibility of these court records in any manner that is permissible under federal law. Rule 27 of the Federal Rules of Criminal procedure states that a party

may prove an official record, an entry in such a record, or the lack of a record or entry in the same manner as in a civil action.  Rule 27, Fed.R.Crim.P.

The Federal Rules of Civil Procedure provide that a foreign official record may be proved and self-authenticated either by an official publication of the record, or a copy of the record that has been certified by the appropriate authorized authority and a final certification of genuineness, usually by an authority from the local embassy or legation.  Rule 44(a)(2), Fed.R.Civ.P.  The rule also provides that if all parties have had a reasonable opportunity to investigate a foreign record's authenticity and accuracy, the court may, for good cause, admit an attested copy without final certification or permit an attested summary without final certification.  Rule 44(a)(2)(C).  However, as we have previously informed the Court, the Russian court authorities have declined to provide certified copies of their court records as such records are regarded as confidential and are not subject to disclosure to non-parties.

Rule 902(3) of the Federal Rules of Evidence is derived from Rule 44(a)(2) but includes a key distinction.  *See United States v. Yousef*, 175 F.R.D.192 (S.D.N.Y. 1997).  That rule also provides for self-authentication of foreign public documents pursuant to the appropriate attestation and certification.  However, the rule also provides that, "[i]f all parties have had a reasonable opportunity to investigate a foreign record's authenticity and accuracy, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification…".  There is no requirement that the proponent provide an attested copy of the foreign public record.  As the court explained in Yousef, supra,  "The plain language of the Rule, however, does not seek to ensure an opportunity to investigate the authenticity of the attestation.  Rather, it requires a reasonable opportunity to investigate the authenticity of the documents themselves. This is consistent with the principal purpose of the Federal Rules of Evidence  as states in Rule 102: 'These rules shall be construed to secure fairness in the administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and the proceedings justly determined.'".  *Id.* at 193.

In this case, the defendants have done all that they can do to obtain duly attested copies of the court opinions.  They have made both formal and informal requests for such attestations, but, as

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

confirmed by the State Department, such requests will go unanswered. Further, Russian jurisprudence and practice prevents the defendants from obtaining "official" copies of the opinions from the files of the Russian courts because only parties to the law suit have such access. But in this case, we have copies of the opinions which have been published on the official websites of three Moscow courts at issue. The defendants have provided the address of the websites, and identified each of the five court opinions which we wish to introduce, each of which are accessible on these websites. Further, the defendants have put the government on notice of our intent to use them.

The defendants cannot compel any of the relevant Russian authorities to attest to the authenticity of copies of the court opinions or to the authenticity of the opinions as they appear on the websites. As the Ninth Circuit observed in affirming the admission of foreign official records without a final certification under Rule 44(a)(2), "in some situations, it may be difficult or even impossible to satisfy the basic requirements of the rule….(T)he foreign officials may not cooperate." *United Staes v. Leal*, 509 F.2d 122, 126 (9th Cir. 1975). The opportunity provided to the government to investigate the authenticity of the court records, coupled with the factual proffer of Igor Lesho as to their official nature, together provides the Court with a sufficiently strong foundation to exercise its discretion and find the records admissible pursuant to Rule 902(3) FRE. *See also, United States v. Pacheco-Lovio*, 463 F.2d 232 (9th Cir. 1972) (affirming the admission of an uncertified Mexican birth certificate where the opposing party had been aware of the intent to admit the document for some time, but failed to render any objection to a lack of good cause for the lack of certification).

In the alternative, the defendants also offer the court opinions as foreign public records under Rule 901(a) and (b)(7) pursuant to the same proffer provided by Attorney Lesho. As a public record or report, it is an exception to the hearsay rule and is admissible for the truth of the matter stated under Rule 802(8) FRE.

Finally, the defendants offer the court records in evidence pursuant to Rule 807 FRE, the Residual Exception to the hearsay rule. That rule provides the Court with substantial discretion to admit these records if the Court finds circumstantial guarantees of trustworthiness equivalent to

those hearsay exceptions covered by Rules 803 and 804.  *United States v. Sinclair*, 74 F.3d 753,758 (7th Cir. 1996).

The case of *United States v. Dumeisi*, 424 F3d. 566(7th Cir. 1996) is instructive.  In that case, the Court of Appeals affirmed the admissibility pursuant to Rule 807, of an Iraqi Intelligence Service report found in Iraq following the fall of Baghdad in 2003.  The file was authenticated under Rule 901(a) through the testimony of a former Iraqi intelligence officer who was unfamiliar with the particular file, but who could identify (generically) certain intelligence cables and could identify other documents because of distinctive characteristics about the style and form of the document that were consistent with his experience as an intelligence officer.  This foundation satisfied the authentication requirements of Rule 901(a), that is, evidence sufficient to support a finding that the matter in question is what its proponent claims.  Rule 901(a) FRE.

The court further found that there were sufficient other guarantees of trustworthiness to admit the files under Rule 807.  The same evidence that satisfied Rule 901 also provided some indicia of reliability under Rule 807.  The Court found other independent evidence that linked the file to the defendant, but also emphasized that the "lack of motive to falsify information and the fact that written records are often more reliable than the potentially hazy memory of the recorder are the classic reasons for excepting business records and official records from the hearsay rule – in other words, for making them firmly rooted hearsay exceptions." *Id*. at 577, *citations omitted*.

In this case, the defense offers the testimony of Igor Lesho who will state that he is familiar with these courts and the manner in which they do business.  He is aware that these courts publish their opinion on the courts' official websites and that these court opinions can be found there.  Further, access to and use of such opinions on the websites is an ordinary part of the judicial system in Moscow.  He and others rely on them as a matter of routine in their professional capacities.  As noted, these public records are publicly available to view and print, but ironically are not subject to attestation by the relevant court authorities.  Nonetheless, there is absolutely no motive to falsify the contents of the opinions.  And, the government has ample opportunity to investigate the bona fides of the opinions and offer any evidence of their lack of authenticity.  Accordingly, the court records

are also admissible pursuant to Rule 807, the Residual Exception the hearsay rule and should be admitted.

// //

// //

// //

// //

IV.   CONCLUSION

For all the foregoing reasons, the Moscow court records should be found authentic and admitted into evidence.

Dated:  November 4, 2010                              /s/
                                                                Jonathan Howden
                                                                Counsel for Defendants
                                                                Mendel Beker and Newcon International Ltd.


Dated:  November 4, 2010                              /s/
                                                                Martha Boersch
                                                                Counsel for Defendants
                                                                Mendel Beker and Newcon International Ltd.


Dated:  November 4, 2010                              /s/
                                                                William L. Osterhoudt
                                                                Counsel for Defendant ARIE PRILIK