1

2                                        PAGES 1 - 55

3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5      BEFORE THE HONORABLE MARILYN HALL PATEL, JUDGE

6      UNITED STATES OF AMERICA,      )
                                      )
7                   PLAINTIFF,        )
                                      )
8        VS.                          )           NO. CR 07-0765 MHP
                                      )
9      MENDEL, BEKER, ET AL.,         )
                                      )
10                  DEFENDANTS.       )
       _____)

11
                                         SAN FRANCISCO, CALIFORNIA
12                                       THURSDAY, OCTOBER 28, 2010

13                       **TRANSCRIPT OF PROCEEDINGS**

14     **APPEARANCES:**

15     FOR PLAINTIFF:          UNITED STATES ATTORNEY
                               450 GOLDEN GATE AVENUE
16                             SAN FRANCISCO, CALIFORNIA  94102
                          BY:  **JEANE HAMILTON**
17                             DAVID J. WARD
                               ASSISTANT UNITED STATES ATTORNEY
18
       FOR DEFENDANT           WINSTON & STRAWN
19     BEKER:                  101 CALIFORNIA ST.
                               SAN FRANCISCO, CA  94111
20                        BY:  **JONATHAN ROBERT HOWDEN**
                               ATTORNEY AT LAW
21

22              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

23     REPORTED BY:            JAMES YEOMANS, CSR #4039, RPR
                               OFFICIAL REPORTER
24
                               COMPUTERIZED TRANSCRIPTION BY ECLIPSE
25

1    <u>**APPEARANCES**</u>:  **(CONTINUED)**

2    FOR DEFENDANT              MARTHA A. BOERSCH
     BEKER:                     ATTORNEY AT LAW
3                               555 CALIFORNIA ST.
                                26TH FLR.
4                               SAN FRANCISCO, CA  94104

5

6    FOR DEFENDANT              WILLIAM OSTERHOUDT
     PRILIK:                    ATTORNEY AT LAW
7                               135 BELVEDERE STREET
                                S.F., CA  94117
8

9                               ANN CAROLE MOORMAN
                                ATTORNEY AT LAW
10                              803 HEARST AVE.
                                BERKELEY, CA  94701
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | THURSDAY, OCTOBER 28, 2010                    2:00 P.M. |
| 2 |         (THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:) |
| 3 |         **THE CLERK:**  CALLING CRIMINAL 07-0765, UNITED STATES |
| 4 | VERSUS MENDEL BECKER, ET AL. |
| 5 |         **THE COURT:**  MAY I HAVE YOUR APPEARANCES, PLEASE. |
| 6 |         **MS. HAMILTON:**  GOOD AFTERNOON. |
| 7 | JEANE HAMILTON REPRESENTING THE UNITED STATES. |
| 8 |         **MR. WARD:**  GOOD AFTERNOON. |
| 9 | DAVID WARD FOR THE UNITED STATES. |
| 10 |         **MR. HOWDEN:**  GOOD AFTERNOON. |
| 11 | JONATHAN HOWDEN AND MARSHA BOERSCH ON BEHALF OF |
| 12 | MR. MENDEL BECKER. |
| 13 |         **MR. OSTERHOUDT:**  GOOD AFTERNOON. |
| 14 | WILLIAM OSTERHOUDT AND ANN MOORMAN ON BEHALF OF |
| 15 | MR. NEWCON. |
| 16 |         **THE COURT:**  WE DISPOSED OF THE MOTIONS IN LIMINE, I |
| 17 | DON'T SEE THERE ARE ANY NEW ONES.  I'M NOT SUGGESTING THERE |
| 18 | SHOULD BE, BY ANY MEANS, BUT WHAT ARE WE GOING TO TAKE UP? |
| 19 |         I'VE SEEN REFERENCES IN YOUR OBJECTIONS TO THEIR JURY |
| 20 | INSTRUCTIONS AND, YOU KNOW, I LIKE TO RESOLVE JURY INSTRUCTIONS |
| 21 | AT A PRETRIAL, BUT I DIDN'T SEE YOUR SET OF JURY INSTRUCTIONS. |
| 22 |         **MS. HAMILTON:**  WELL, YOUR HONOR -- |
| 23 |         **THE COURT:**  YOU REFERRED TO THEM BY NUMBER, BUT DID |
| 24 | YOU FILE THEM?  BECAUSE WE LOOKED FOR THEM. |
| 25 |         **MS. HAMILTON:**  YOUR HONOR, THEY'VE NOT BEEN FILED. |

WE'RE FINALIZING, WE'RE TRYING TO GET TO THE POINT WHERE BOTH

PARTIES, WE CAN PRESENT TO YOU A SET OF JURY INSTRUCTIONS THAT

BOTH PARTIES AGREE TO.

AND TO THE EXTENT THERE MIGHT BE MORE IN WHICH THE

PARTIES DON'T AGREE, THEN THOSE ARE FILED SEPARATELY.  IT'S

JUST WE'RE VERY LAST PART OF FINALIZING VERY LAST PIECES.

**THE COURT:**  THE ONES THAT WERE SUBMITTED BY THE

DEFENDANT AND TO WHICH YOU HAVE SUBMITTED OBJECTIONS, ARE THOSE

THE ONES THAT, THE ONLY ONES THAT NEED TO BE FINALIZED?

**MS. HAMILTON:**  NO, YOUR HONOR.  THE ONES --

**THE COURT:**  THAT WAS TOO MUCH TO HOPE FOR.

**MS. HAMILTON:**  YOUR CUP WAS HALF FULL, YOUR HONOR.

WHERE WE ARE NOW, THERE'S STILL DEBATE ABOUT THE LANGUAGE IN

THE WIRE FRAUD COUNTS, AND WE WERE IN THE PROCESS OF CONFERRING

WITH COUNSEL.

BUT AFTER RECEIVING THEIR PROPOSED JURY INSTRUCTIONS

FOR THE WIRE FRAUD SECTION, DIDN'T HAVE THAT OPPORTUNITY TO

PRESENT ANY OBJECTIONS ON THEIRS.

SO WHEN THEY FILED, WHEN THE DEFENDANTS FILED THEIR

WIRE FRAUD JURY INSTRUCTIONS, THEN WE FILED THE OPPOSITIONS

BECAUSE THERE WAS NO WAY TO GET, AT LEAST, THAT ISSUE BEFORE

THE COURT.

WHAT'S STILL LEFT, THERE ARE ISSUES REGARDING KIND OF

SOME CONSPIRACY LANGUAGE AND THE LANGUAGE FOR THE SCHEME TO

DEFRAUD.  MOST OF IT IS FROM MODEL JURY INSTRUCTIONS.

```
 1          IT'S JUST GETTING TO THE LAST PART, SO WE DON'T HAVE

 2   TWO SETS OF JURY INSTRUCTIONS THAT JUST HAVE DIFFERENCES IN

 3   VERBIAGE.

 4          MS. BOERSCH:  THERE'S GOING TO BE A SET, I DON'T KNOW,

 5   DAVID, WHAT YOU THINK?  ABOUT A DOZEN OR MORE INSTRUCTIONS, I

 6   THINK, WE'RE GOING TO ABLE TO AGREE ON.

 7          THEN THERE'S GOING TO BE A SET OF THE GOVERNMENT'S

 8   PROPOSED INSTRUCTIONS RELATED TO THE WIRE FRAUD COUNTS THEY ARE

 9   PROPOSING THAT WE DON'T AGREE TO, SO WE WILL DIRECT YOU TO

10   THOSE.

11          THEY LIKEWISE OBJECT TO OUR PROPOSED INSTRUCTION ON

12   THE WIRE FRAUD COUNTS.

13          THE COURT:  DO WE HAVE THEM SUFFICIENTLY JELLED BEFORE

14   US, IF WE CAN TAKE UP THE ONES, FOR EXAMPLE, THERE OBJECTIONS

15   TO, OR I HATE TO GO THIS PROCESS AND FIND OUT THAT, YOU KNOW,

16   THEN I'M GOING TO GET A WHOLE NEW SET OF INSTRUCTIONS RELATED

17   TO THE SAME ISSUES OR WHATEVER.

18          MR. WARD:  I THINK, THE CORE DISAGREEMENT REVOLVES

19   AROUND THE WIRE FRAUD INSTRUCTIONS.  I THINK, IT WOULD BE

20   BETTER FOR THIS COURT TO SEE THE GOVERNMENT'S PROPOSED WIRE

21   FRAUD INSTRUCTIONS.

22          AND WE WILL INCLUDE THEIR OBJECTIONS TO THOSE

23   SIDE-BY-SIDE WITH THE THREE WIRE FRAUD INSTRUCTIONS THAT THEY

24   FILED, SO THAT YOUR HONOR HAS ALL OF THE --

25          THE COURT:  I SORT OF CAN PICTURE IT IN MY MIND,
```

```
1    LOOKING AT YOUR OBJECTIONS AND LOOKING AT WHAT THEY HAVE TO --

2    LOOKING AT WHAT THEY SUBMITTED.

3         WHAT ARE WE GOING TO DO TODAY THEN?

4         MR. HOWDEN:  I THINK, SCHEDULING IS ONE OF THE ISSUES

5    WE OUGHT TO ADDRESS.

6         THE COURT:  I THOUGHT WE HAD DONE THAT.

7         MR. HOWDEN:  WE UNDERSTOOD THERE WAS SOME CONCERN

8    WHETHER OR NOT THERE WAS ENOUGH TIME TO GET THE TRIAL IN BEFORE

9    DECEMBER 2ND.

10        THE COURT:  I HAD CONCERN BECAUSE, ACTUALLY, I THINK,

11   THE TRIAL I'M IN NOW IS GOING TO FINISH MAYBE EVEN FASTER THAN

12   THEY THOUGHT IT WAS GOING TO FINISH, BUT WE CAN PROBABLY START

13   ON THIS CASE NEXT WEEK.

14        BUT WHAT GENERATED MY CONCERN WAS THESE SUBMISSION,

15   WAS SIGNING OFF FOR LETTERS ROGATORY AND OTHER KIND OF THINGS

16   BEING OBTAINED FROM OVERSEAS.  HOW IS THIS EVER GOING TO BE

17   DONE IN TIME FOR THE TRIAL DATE WE HAVE?

18        MR. HOWDEN:  IT'S A SUBSTANTIAL PROBLEM FOR US, YOUR

19   HONOR, BUT I DON'T SEE IT --

20        THE COURT:  LET'S FIGURE OUT WHAT WE'RE GOING TO DO

21   ABOUT IT.  CAN'T SORT OF DO A HALF TRIAL, RIGHT?

22        MR. HOWDEN:  WELL, WOULD PROPOSE THERE IS AN

23   ALTERNATIVE WAY TO GET THOSE FOREIGN COURT RECORDS INTO

24   EVIDENCE UNDER 902.  AND WE WOULD HOPE TO BE ABLE TO MAKE

25   SUFFICIENT SHOWING FOR THE COURT, SO THAT THE COURT COULD FIND
```

1    THAT THEY'RE ADMISSIBLE, IN ANY EVENT.

2              **THE COURT:**  BUT WOULDN'T YOU WANT TO DO THAT WELL IN

3    ADVANCE, SO YOU KNOW WHETHER THAT'S GOING TO HAPPEN OR NOT?

4              **MR. HOWDEN:**  WE HAVEN'T HAD THAT OPPORTUNITY, SO WE'RE

5    STUCK WITH WHAT WE HAVE.

6              **THE COURT:**  I'VE NEVER NOTICED THERE WAS A RELUCTANCE

7    ON THE PART OF LAWYERS TO FILE PAPERS.  I WISH THERE WERE

8    RELUCTANCE, BUT WHY DON'T YOU JUST FILE SOMETHING.

9              WE SET THIS AS A PRETRIAL DATE, I THINK, RIGHT?

10             WHAT DID WE SET IT AT, A SCHEDULING DATE ONLY?

11             **MS. HAMILTON:**  PRETRIAL DATE.

12             **THE COURT:**  THIS WOULD BE THE TIME TO DEAL WITH THAT

13   ISSUE.  ARE THEY GOING TO COME IN OR NOT COME IN ON THAT

14   THEORY.  IF THEY'RE NOT COMING IN ON THAT THEORY, WHAT ARE YOU

15   GOING TO DO?

16             **MR. HOWDEN:**  GOOD POINT, YOUR HONOR.  I WILL FILE

17   SOMETHING FORTHWITH.

18             **THE COURT:**  WELL, SO WHAT ARE WE GOING TO DO TODAY?

19             **MR. OSTERHOUDT:**  WHAT WE DON'T WANT TO DO, YOUR HONOR,

20   IS -- IF WE CAN AVOID IT, LOSE THE TRIAL DATE.  BECAUSE WE'VE

21   HAD IT FOR QUITE AWHILE.  IT'S IMPORTANT TO THE DEFENDANTS AND

22   PROBABLY TO THE GOVERNMENT.

23             WE DID NOT REALIZE THAT WHEN WE HAD THE DECEMBER 2ND,

24   WE WERE THINKING ABOUT SOME KIND OF PROPOSALS TO GIVE THE COURT

25   FOR YOUR CONSIDERATION, WE -- I DON'T THINK ANYBODY THOUGHT

```
 1   THROUGH VETERANS DAY AND THE DAY AFTER IT, BUT I UNDERSTAND

 2   THEY'LL BE A HOLIDAY THE DAY AFTER IT.  PROBABLY, WOULD HAVE

 3   PROBLEM WITH JURORS WHO WANT TO GO AWAY FOR THE LONG WEEKEND.

 4            I GIVE CREDIT TO THE PROSECUTION THAT CALLED OUR

 5   ATTENTION IT AT THE LAST PRETRIAL.  I DON'T THINK ANYBODY

 6   NOTICED IT.  THEN WE HAVE THANKSGIVING, WHAT WE CAN DO ABOUT

 7   THAT, YOU KNOW.

 8            THE COURT:  GIVE THANKS, I GUESS.

 9            MR. OSTERHOUDT:  GIVE THANKS, THERE YOU GO.  SO JUST

10   TALKING AMONG OURSELVES WE WERE, WE DON'T WANT TO OBVIOUSLY GET

11   INTO A SITUATION WHERE THE TRIAL HAS A BREAK AND SEND THE

12   JURORS AWAY FOR A LONG TIME, WE THINK IT WOULD BE BAD.

13            THE COURT:  THAT'S NOT --

14            MR. OSTERHOUDT:  THAT'S NOT SOMETHING WE CAN DO.  YOUR

15   CALENDAR IS ON MONDAYS, I THINK, YOU NEED, I ASSUME, TO HANDLE

16   MATTERS.

17            ONE POSSIBILITY WE THOUGHT OF WAS TRYING TO GO FULL

18   DAYS MAYBE SOME OF THE TIME, SO THAT WE COULD GET A LITTLE BIT

19   MORE OUT OF EACH DAY, THAT MIGHT BE HELPFUL.

20            WE JUST DIDN'T WANT TO BE IN CRUNCH AT THE OTHER END.

21   I THINK, BOTH PARTIES WE ALL HAVE FLINGS TO SAY WE WANT TO HAVE

22   FULL OPPORTUNITY, OBVIOUSLY.

23            THE COURT:  WHAT IF YOU CAN'T GET THOSE DOCUMENTS IN?

24   I HAVE NO IDEA, I HAVEN'T THOUGHT ABOUT IT.  FIRST I HEARD THAT

25   MIGHT BE SOMETHING THAT WOULD BE RAISED.
```

```
1          IF YOU CAN'T GET THOSE DOCUMENTS IN THAT YOU WANT IN

2     THAT, YOU'RE ADDRESSING BY WAY OF THE, I ASSUME, THEN THE

3     LETTERS ROGATORY ARE GOING TO THOSE ISSUES; IS THAT CORRECT?

4          MR. HOWDEN:  THAT'S CORRECT.

5          THE COURT:  AND THEN WHAT HAPPENS?

6          MR. HOWDEN:  IF WE DON'T GET THEM IN, WE DON'T GET

7     THEM IN.  WE MAY HAVE TO ASK FOR A CONTINUANCE.

8          I HAVE TO TELL YOU IN ALL CANDOR, EVEN THE STATE

9     DEPARTMENT'S WEBSITE WARNS EVEN OFFICIAL REQUESTS FOR DOCUMENTS

10    FROM RUSSIA SOMETIMES GO COMPLETELY UNANSWERED.

11         MR. OSTERHOUDT:  FOREVER.

12         MR. HOWDEN:  FOREVER.

13         MR. OSTERHOUDT:  WE HATE TO PUT A CASE OVER WITH THAT

14    IN MIND, MAY WE GO OVER FOR --

15         MS. HAMILTON:  YOUR HONOR, IF I MAY, WE COMPLETELY

16    AGREE WITH THE DEFENSE.  THE PROBABILITIES OF RECEIVING ANY OF

17    THOSE DOCUMENTS ARE SLIM FROM RUSSIA.  OUR PARTICULAR --

18         THE COURT:  SLIM RECEIVING THEM AT ALL?

19         MS. HAMILTON:  YES.

20         THE COURT:  OR EVER RECEIVING THEM WITHIN THE TIME

21    FRAME WE HAVE NOW?

22         MS. HAMILTON:  I THINK, RECEIVING THEM AT ALL.  IT'S

23    FAIRLY SLIM FROM RUSSIA.  AND, I THINK, ALSO JUST TO KIND OF,

24    UNDER THE SPEEDY TRIAL ACT A YEAR IS THE MOST YOU WOULD GET

25    ANYWAY FOR AN OUTSTANDING REQUEST.
```

1          BUT I AM CONCERNED THAT, I JUST WANT TO MAKE SURE WE

2     DON'T START TRIAL, THEN THE DOCUMENTS HAVEN'T ARRIVED IN TIME

3     AND THEN --

4          **THE COURT:**  MY CONCERN, ALL THE DOCUMENTS, I

5     FORGOTTEN, ALL THE DOCUMENTS THAT YOU'RE SEEKING BY VIRTUE OF

6     THE LETTERS, IS THERE ANY OTHER DISCOVERY YOU HAVE OUT WITH

7     RESPECT TO OVERSEAS?

8               **MR. HOWDEN:**  NO.  THERE WERE --

9          **THE COURT:**  THEY ALL RELATE TO DOCUMENTS IN RUSSIA?

10              **MR. HOWDEN:**  YES.  WE ACTUALLY PRODUCED COPIES OF THE

11    DOCUMENTS WE'RE SEEKING TO YOUR HONOR IN CONNECTION WITH THE

12    TRANSLATIONS.

13         **THE COURT:**  I DIDN'T GO THROUGH EACH OF THEM TO

14    DETERMINE IF SOME OF THEM WERE IN SOME OTHER LOCATION OR

15    WHATEVER.

16              **MR. HOWDEN:**  SO WE PRODUCED TO YOU THE DOCUMENTS WE'RE

17    SEEKING TO HAVE CERTIFIED.

18         **THE COURT:**  DO YOU KNOW, DO YOU EVER GET AN ANSWER OR

19    IS IT JUST A LONG TIME TO GET AN ANSWER?

20              **MS. HAMILTON:**  I WOULD SAY, THE ANTITRUST EXPERIENCE

21    IS, COMING OUT OF RUSSIA AT TIMES YOU CAN MAKE REQUESTS AND

22    SOMETIMES THEY'RE ANSWERED AND SOMETIMES THEY'RE NOT.  BEING

23    ABLE TO COUNT ON ANY FINALITY, I THINK, IS QUESTIONABLE.

24         **THE COURT:**  WHAT ABOUT, IF IN FACT YOU CAN'T GET THOSE

25    DOCUMENTS, AND IF IN FACT THEY'RE RELEVANT AND NECESSARY TO

1   PROVIDING, YOU KNOW, A DEFENSE, WHAT ABOUT THE -- WERE YOU

2   AWARE OF THE FACT THEY WERE THINKING OF RAISING SOME ISSUES

3   UNDER, WHAT SECTION IS IT YOUR LOOKING AT, 900?

4            **MR. HOWDEN:**  902.

5            **THE COURT:**  902.  LOOKING AT 902 AND WHETHER THEY

6   WOULD BE ADMISSIBLE UNDER 902, ARE YOU GOING TO FIGHT THAT?

7            **MS. HAMILTON:**  YES YOUR HONOR.

8            **THE COURT:**  YOU'RE TELLING ME, ON THE OTHER HAND,

9   THEY'RE NOT AVAILABLE?

10           **MS. HAMILTON:**  BUT UNDER 902 THERE ARE CERTAIN

11  SAFEGUARDS IN PLACE.  WE SENT A STIPULATION OVER TO KIND OF

12  START THIS PROCESS, THERE'S NO WAY THE DOCUMENTS COULD BE

13  AUTHENTICATED.  THEY'RE BASICALLY PRINTS OUT OFF A WEBSITE FROM

14  RUSSIA.

15           **MR. HOWDEN:**  JUST NOT OFF OF ANY WEBSITE, THE COURT

16  OFFICIAL WEBSITE AND PUBLIC DOCUMENTS THAT WERE MADE AVAILABLE

17  THERE.

18           **THE COURT:**  YOU'RE TALKING ABOUT THE DOCUMENTS

19  THEMSELVES THEY'RE FROM THE RUSSIAN GOVERNMENT WEBSITE?

20           **MR. HOWDEN:**  THE VARIOUS COURTS' WEBSITE.

21           **MS. BOERSCH:**  I THINK, THE ONLY ISSUE IS AUTHENTICITY

22  THAT WE ASKED THE GOVERNMENT TO STIPULATE TO.  I DON'T BELIEVE

23  WE ASKED THEM TO STIPULATE TO THE RELEVANCE OR ANYTHING ELSE,

24  JUST THE AUTHENTICITY.

25           **MR. HOWDEN:**  NO, JUST THE AUTHENTICITY.

1    **MS. HAMILTON:**  OUR POSITION, YOUR HONOR, THERE'S NOT

2  ENOUGH INFORMATION THERE TO FEEL COMFORTABLE STIPULATING TO THE

3  AUTHENTICITY.  I THINK, ACTUALLY, INSTEAD OF 902, BECAUSE

4  THEY'RE FOREIGN RECORDS FOR CRIMINAL CASES 18 3505 IS WHAT

5  WE'VE BEEN REVIEWING, FOREIGN CERTIFICATION IS REQUIRED.

6    **THE COURT:**  WELL, WHAT ABOUT THAT?

7    THAT LAST LONG SENTENCE IN SUB-PARAGRAPH THREE.  IF

8  REASONABLE OPPORTUNITY HAS BEEN GIVEN TO ALL PARTIES TO

9  INVESTIGATE THE AUTHENTICITY AND ACCURACY, THE COURT MAY WITH

10  GOOD CAUSE.

11    **MR. HOWDEN:**  THAT'S BASICALLY THE SAME LANGUAGE AT

12  902.

13    **THE COURT:**  THAT IS 902.  JUST OFF THE TOP OF MY HEAD.

14    **MR. HOWDEN:**  WE CAN PROVIDE THE COURT WITH A

15  DECLARATION OF A RUSSIAN LAWYER WHO IS LICENSED TO PRACTICE LAW

16  IN MOSCOW AND IN THE WEST.  THAT HE'S REVIEWED THESE COURT

17  RECORDS, HE'S FAMILIAR WITH THESE COURT RECORDS AND THAT AS FAR

18  AS HE CAN TELL THESE ARE ACCURATE COPIES OF THE RECORDS THAT

19  ARE PUBLICLY AVAILABLE ON THE WEBSITE.

20    **MS. HAMILTON:**  YOUR HONOR, 902 DOES NOT APPLY.  THIS

21  IS A CRIMINAL CASE, THEY'RE FOREIGN RECORDS.  IT'S 18 USC 3505

22  AND, I BELIEVE, UNDER 3505 THERE ISN'T THE SAME LEEWAY IN TERMS

23  OF TRUSTWORTHINESS.

24    I'M JUST LOOKING REALLY BRIEFLY.  WOULD -- 3555(A)(1)

25  LARGE D SAYS, THE METHOD OF, UNLESS THE SOURCE INFORMATION OR

1    METHOD OR CIRCUMSTANCE PREPARATION INDICATE LACK OF

2    TRUSTWORTHINESS, CAN FIND PRETTY MUCH ANYTHING ON THE WEB AND,

3    I THINK, THAT THAT'S A CONCERN.

4              **MR. HOWDEN:**  WELL, I THINK, THE FACT THESE ARE THE

5    OFFICIAL COURT WEBSITES COUPLED WITH THE PRACTICING LAWYER'S

6    TESTAMENT AS TO THEIR AUTHENTICITY GOES A LONG WAY TO

7    ESTABLISHING, AT LEAST, THE FOUNDATION TO THEIR AUTHENTICITY.

8              ESPECIALLY IN LIGHT OF THE FACT THERE'S LIKELY NO

9    OTHER WAY TO CERTIFY THEM.  THE POINT IS ONE THAT COULD GO TO

10   WEIGHT RATHER THAN ADMISSIBILITY.

11             **THE COURT:**  I ALWAYS HATE THOSE REMARKS, IS THAT ALSO

12   FOUND OUT WHEN I WAS PRACTICING A COP OUT FOR A JUDGE WHO

13   DIDN'T REALLY WANT TO STUDY THE RULES ADMITTED GO TO THE

14   WEIGHT, WHAT DOES THAT MEAN?

15             **MR. HOWDEN:**  I'VE HAD A LOT EVIDENCE ADMITTED AGAINST

16   MY CASE ON THOSE GROUNDS, I MUST SAY.

17             **THE COURT:**  WELL, WHAT WOULD YOU HAVE TO DO TO

18   AUTHENTICATE SOMETHING?

19             JUST ASSUME FOR THE MOMENT THAT U.S. WAS A FOREIGN

20   POWER, SOMETIMES I THINK IT IS, BUT AT ANY RATE, THE U.S.A.

21   WERE A FOREIGN POWER AND YOU HAD TO FOLLOW THESE RULES, AND YOU

22   GO ON THE COURTS, VARIOUS COURTS' WEBSITES AND PULL UP THINGS

23   FROM ECF AND PRESENT THEM, WHAT WOULD YOU HAVE TO DO IN ORDER

24   TO, WOULD YOU HAVE TO STILL HAVE AN AUTHENTICATION?

25             IF YOU COULDN'T GET AN AUTHENTICATION, COULD YOU HAVE

```
1    SOMEONE WHO'S FAMILIAR WITH THE COURT'S WEBSITES AND WAS USED

2    REGULARLY STATE THAT, YOU KNOW, THIS WOULD APPEAR TO BE A

3    RECORD KEPT IN THE ORDINARY COURSE?

4             MS. HAMILTON:  WELL, YOUR HONOR, CUSTODIAN OF THE

5    COURT WOULD BE IN THE POSITION TO UNDERSTAND OR TO TESTIFY AS

6    TO THE AUTHENTICITY OF THE DOCUMENTS.

7             THE COURT:  WELL, BUT SUPPOSE YOU CAN'T GET THAT

8    PERSON.

9             MS. HAMILTON:  THERE ARE -- SO YOU'RE SAYING, IF AN

10   ATTORNEY THEN WHO HAD SOME EXPERIENCE OR FAMILIARITY FILING

11   UNDER THAT SYSTEM?

12            THE COURT:  YES.

13            MS. HAMILTON:  I GUESS, THEY COULD TESTIFY TO THEIR

14   PERSONAL EXPERIENCE, BUT WHETHER THAT PERSONAL EXPERIENCE

15   EXTENDS TO THE PARTICULAR DECISIONS FOR A PARTICULAR CASE, THAT

16   INDIVIDUAL, AT LEAST, THAT WE'VE SEEN, HAD NO INTERACTIONS, HAD

17   NO RESPONSIBILITY OR EXPERIENCE IN THESE PARTICULAR CASES.

18   THIS PERSON HAS BEEN HIRED TO BASICALLY SURF THE WEB.

19            MS. BOERSCH:  NOT SEARCHING THE WEB, I THINK, WE NEED

20   TO CLEAR UP THIS CHARACTERIZATION.  GETTING DOCUMENTS OFF A

21   COURT WEBSITE JUST LIKE THIS COURT HAS A WEBSITE, WITH A

22   FILLING SYSTEM, HAPPENS TO BE IN RUSSIA, AND WE HAVE A LICENSED

23   OFFICER OF THE LAW IN RUSSIA WHOSE WILLING TO PROVIDE A

24   DECLARATION THAT HE IS SO LICENSED, AND JUST LIKE ALL OF US

25   HERE HE'S AN OFFICER OF THE COURT, TO EXPLAIN THE COURT
```

1   RECORDS, DIMENSIONS, MECHANICS OF THE COURT'S RECORDS IN RUSSIA

2   HE OBTAINED THEM.

3       I THINK, THE PROSECUTION TRYING TO SORT OF PROVIDE

4   ANALOGY, THE COURT -- THAT WE JUST GOT THESE OFF OF SOME RANDOM

5   WEBSITE, AND THAT THESE ARE COURT RECORDS, THAT WE HAVE GOOD

6   FAITH LEGAL REASON TO BELIEVE THEY'RE FROM RUSSIAN COURT

7   WEBSITE IN RUSSIA, AND WE HAVE AN OFFICER OF THE LAW WHOSE

8   WILLING TO PROVIDE AN AUTHENTICATION ABOUT THAT PROCESS AND

9   THEIR VIABILITY AND HOW HE OBTAINED THEM.

10       **MR. HOWDEN:**  AND THE GOVERNMENT HAS AN OPPORTUNITY TO

11   POKE HOLES IN THAT FOUNDATION IF THEY'RE OF A MIND TO.

12       **THE COURT:**  COULD WE NOW, IF YOU HAD THE WEBSITE

13   ADDRESS AND SO FORTH, URL OR WHATEVER IT IS YOU NEED, CAN YOU

14   GO ON HERE AND ACCESS THOSE RECORDS?

15       **MR. HOWDEN:**  YES, I BELIEVE SO.

16       **MS. HAMILTON:**  ACTUALLY, ONE OF THE POINTS THAT, I

17   THINK, IS OF CONCERN, IS ONE OF THE RECORDS OR FILES THAT WAS

18   BEING PROVIDED TO YOU, PROBABLY THE LETTERS ROGATORY, THAT

19   INDIVIDUAL COULD NOT FIND ON THE WEBSITE, AND SO SAID THE ONLY

20   THING, THE ONLY WAY I THINK THAT THEY'RE RELIANT, THEY HAD ANY

21   RELIANCE ON THE UNDERLYING DECISION, BECAUSE AN APPELLATE

22   DECISION HAD BEEN MADE.

23       **MR. HOWDEN:**  NONE OF THE DOCUMENTS WE PROVIDED YOU

24   WERE UNAVAILABLE ON THE WEB.  THERE WAS A RELEVANT OPINION THAT

25   WAS NOT AVAILABLE ON THE WEB AND THE RUSSIAN LAWYER MADE NOTE

1    OF THAT FACT AND EXPLAINED HOW.  IT'S NOT REALLY RELEVANT HERE.

2            WE DIDN'T PROVIDE YOUR HONOR WITH ANY DOCUMENTS.

3    WE'RE NOT ASKING FOR ANY DOCUMENTS THAT AREN'T AVAILABLE ON THE

4    WEBSITE.

5            THE COURT:  WELL --

6            MS. BOERSCH:  WE WERE TRYING TO ANSWER YOUR QUESTION.

7    YES, WE THINK THAT IF WE HAD THE RIGHT -- WE COULD ACCESS THESE

8    RECORDS ON THE INTERNET.

9            THE COURT:  IF WE UNDERSTOOD RUSSIAN WE COULD READ

10   THEM.

11           MR. HOWDEN:  YES.

12           THE COURT:  PRESUMABLY.

13           MR. HOWDEN:  IF OUR CONNECTION WAS GOOD ENOUGH WE

14   COULD PULL ONE UP RIGHT NOW.

15           THE COURT:  AND, WELL, INTERESTING QUESTION.  FOR

16   EXAMPLE, IF WE WANTED TO FIND OUT A PARTICULAR, WHAT HAPPENED

17   IN A PARTICULAR CASE, WHETHER JUDGMENT WAS ENTERED FOR CERTAIN

18   AMOUNT OR SOMETHING LIKE THAT FROM ANOTHER COURT IN ANOTHER,

19   YOU KNOW, ANOTHER FOREIGN COUNTRY, TEXAS, YOU KNOW, THEN THE

20   EASTERN DISTRICT OF TEXAS, AND THE COURT COULD CERTAINLY PULL

21   THAT UP.  I CAN ACCESS ANY OF THOSE COURTS AND PROBABLY YOU

22   CAN, TOO, AND PULL UP A JUDGMENT.

23           COULD I TAKE JUDICIAL NOTICE OF THAT?

24           MS. HAMILTON:  I DON'T KNOW.  I MEAN, I THINK, THAT

25   WE'RE BACK TO MAKING SURE THERE'S A FOUNDATION.  THE JUDICIAL

1   NOTICE SHOULD BE MADE, IF THERE'S SOME DEGREE OF

2   TRUSTWORTHINESS.

3          IS THIS REALLY AN OFFICIAL WEBSITE FOR THESE

4   PARTICULAR COURTS?

5          ARE THE COURTS OPERATING IN SUCH A WAY THAT'S SIMILAR

6   TO THE UNITED STATES, THOSE DOCUMENTS ARE TRUSTWORTHY?

7          I MEAN, ONCE THOSE STEPS ARE MADE THEN, PERHAPS, SO.

8          **MR. WARD:**  IF WE WERE TO ASK YOUR HONOR TO TAKE

9   JUDICIAL NOTICE OF A DECISION IN THE CENTRAL DISTRICT, I THINK,

10  THAT WOULD BE ONE THING.  THERE WOULD BE INDICIA OF

11  TRUSTWORTHINESS.

12         BUT TO SAY, YOUR HONOR, THERE'S A COURT IN RUSSIA

13  UNDER A SYSTEM WE DON'T UNDERSTAND, WE HAVEN'T PRACTICED IN, WE

14  DON'T SPEAK THE LANGUAGE, WE CAN'T ACCESS THE WEBSITE, WE DON'T

15  KNOW HOW THE DECISIONS ARE FILED OR WHAT THEY MEAN, THERE ISN'T

16  THAT SAME INDICIA OF RELIABILITY.

17         AND THE DEFENDANTS HAVE SAID, WELL, WE HIRED THIS

18  LAWYER WHO WILL TELL US, WHO WILL TELL YOU THIS, AN UNTESTED

19  DECLARATION.

20         AND THEN WE HAVE ALL THESE DOCUMENTS WE DON'T KNOW IF

21  THEY'RE FINAL JUDGMENTS, WE DON'T KNOW ENOUGH TO SAY.  AT THE

22  END OF THE DAY YOU REALLY HAVE TO TAKE THE DEFENDANTS AT THEIR

23  WORD, WELL, THESE ARE WHAT THEY SAY THEY ARE.

24         **THE COURT:**  WHAT ARE THOSE PARTICULAR DOCUMENTS IN

25  QUESTION?

1        YOU CAN PUT IT ON THE RECORD, THEY CONSIST OF WHAT

2   KIND OF DOCUMENTS?

3        **MR. HOWDEN:**  THEY ARE THE OPINIONS OF SEVERAL

4   DIFFERENT COURTS HEARING A TOTAL OF THREE CUSTOMS CASES IN

5   MOSCOW.  EACH OF THE THREE CASES INVOLVE THE ACTUAL NIGHT

6   VISION GOGGLES THAT ARE AT ISSUE IN THIS TRIAL HERE TODAY.

7        AND MAKE REFERENCE TO THE NATURE OF THE CUSTOMS

8   DISPUTE WITH THE IMPORTER, WHAT WAS DONE BOTH IN MOSCOW AND IN

9   SIBERIA.  WHAT THE ULTIMATE ISSUE WAS, WHY CUSTOMS HAD A

10  PROBLEM WITH THE GOGGLES THAT WERE BEING EXPORTED, WHAT THEY

11  DID ABOUT IT AND WHY.

12       INCLUDING THE SPECIFICATIONS OF THE GOGGLES, WHY THOSE

13  SPECIFICATION WERE RELEVANT TO THE LEGAL PROBLEMS THAT THE

14  CUSTOMS SERVICE WAS BRINGING.

15       EVEN IDENTIFIES A TNT COMPANY IN THIS CASE, THE

16  COMPANY WHOSE GOING TO SELL THEM.  AND SOME OF THESE SELECTED

17  OPINIONS THEY IDENTIFY BY SERIAL NUMBER PARTICULAR GOGGLES THAT

18  WE CAN ACTUALLY TRACE THROUGH AS BEING GOGGLES THAT WERE

19  SUPPLIED PURSUANT TO THE SUBCONTRACT THAT'S AT ISSUE IN THE

20  CASE.

21       SO CONTAINS A WEALTH OF RELEVANT INFORMATION THAT

22  SERVES SEVERAL KEY PURPOSE IN THIS CASE.  AMONG OTHER THINGS IT

23  ESTABLISHES PRETTY CONCLUSIVELY IN MY MIND, AT LEAST, THAT THE

24  GOGGLES THAT WERE IMPORTED WERE NOT ANYWHERE NEAR THE QUALITY

25  THAT MR. ROCKLIN, THE GOVERNMENT'S KEY WITNESS STATED THAT THEY

WERE WHEN HE ENTERED INTO THIS AGREEMENT WITH ITE TO PROVIDE

THEM.  SO DIRECTLY UNDERCUTS HIS CREDIBILITY.

THEY'RE ALSO USEFUL TO DISPEL THE NOTION THAT THE

RUSSIAN CUSTOMS INVESTIGATION WAS SOMEHOW A PUT UP JOB OR

COLORED BY IMPROPER PURPOSE.

IT'S CLEAR THAT THERE WAS A GENUINE ISSUE BETWEEN THE

CUSTOMS SERVICE AND THE PEOPLE EXPORTING THESE GOGGLES AS TO

WHETHER OR NOT THEY REQUIRED A LICENSE.  AND THAT DISPUTE WENT

ON LITERALLY FOR YEARS AND WASN'T FINALLY RESOLVED UNTIL SOME

TIME IN 2008, AND IT WAS ACTUALLY RESOLVED IN FAVOR OF ATN.

THEY WERE RIGHT OR NOT, IN FAVOR OF THEIR EXPORTER,

BUT THEY WERE ONLY RIGHT BECAUSE THE LOW QUALITY OF THE GOGGLES

WHICH WERE MUCH LOWER THEN WHAT MR. ROCKLIN SAID THEY WERE WHEN

HE OFFERED THEM FOR SALE TO HIS PRIME CONTRACTOR.

**THE COURT:**  I THOUGHT WE WENT OVER THE FACT THAT THE

QUALITY OF THE GOGGLES REALLY IS NOT AN ISSUE.

**MS. BOERSCH:**  THEY HAVE BACKED OFF.  THEY WERE

INITIALLY CLAIMING THAT THE STATEMENTS THAT MR. PRILIK MADE IN

THAT REGARD WERE FALSE.  THEY BACKED OFF OF THAT NOW TO SUPPORT

THEIR THEORY, NOW THAT'S NOT AT ISSUE, IT'S NOT RELEVANT.

THEY ARE TRYING TO BRING IT BACK IN, TO SOME EXTENT,

IN THE JURY INSTRUCTIONS, WHICH YOU'LL SEE WHEN WE START TO

ARGUE OVER THOSE.

BUT MORE IMPORTANTLY, I THINK, MR. HOWDEN'S POINT,

THIS ISSUE GOES TO THE CREDIBILITY OF MR ROCKLIN, WHOSE GOING

1   TO BE THE PRIMARY WITNESS AGAINST THE DEFENDANT.  THAT'S WHAT

2   THIS IS RELEVANT TO.

3            IT GOES DIRECTLY TO HIS, NUMBER ONE, HIS BIAS AND,

4   NUMBER TWO, WHETHER OR NOT HE'S TELLING THE TRUTH WHEN HE

5   CHARACTERIZES THE CONVERSATIONS THAT ARE GOING TO BE PLAYED TO

6   THE JURY IN THIS COURT.

7            GOES ABSOLUTELY DIRECTLY TO ROCKLIN'S CREDIBILITY WHEN

8   HE TESTIFIES TO THOSE TAPES AND HIS CONSERVATION WITH MR. BEKER

9   AND WHAT MR. BEKER WAS SAYING.

10            IT GIVES THE JURY THE INFORMATION IT NEEDS TO EVALUATE

11  THOSE STATEMENTS THAT WERE -- THEY'RE GOING TO HEAR ON THOSE

12  TAPES.

13            **MR. HOWDEN:**  IF I MIGHT, AND YOUR HONOR HAS A WHOLE

14  BINDER FULL OF TRANSCRIPTS THAT THE GOVERNMENT PROVIDED YOU

15  WITH WITH RESPECT TO THOSE PORTIONS OF THE CONVERSATIONS IN

16  WHICH MY CLIENT ALLEGEDLY SAYS THAT HE'S RESPONSIBLE FOR ALL OF

17  ATN'S PROBLEMS IN RUSSIA.

18            THESE COURT OPINIONS SHOW WHAT THOSE PROBLEMS WERE AND

19  THE TRUE NATURE OF THOSE PROBLEMS.  AND THEY GO A LONG WAY TO

20  DISPELLING THIS SORT OF CLOUD, THAT'S THIS ALLEGED 404(B)

21  MATERIALS THAT THE GOVERNMENT IS ATTEMPTING TO PUT OVER THE

22  DEFENDANTS IN THIS CASE.

23            SO, AGAIN, THEY GO TO MULTI-PURPOSE AND MULTIPLE

24  IMPORTANT REASONS, THE PRINCIPLE ONE BEING MR. ROCKLIN'S

25  CREDIBILITY.

1            **MS. HAMILTON:**  WELL, YOUR HONOR, FIRST OF ALL, IN

2    TERMS OF MR. ROCKLIN'S CREDIBILITY, WHAT'S HAPPENING HERE, THE

3    DEFENDANTS ARE TRYING TO PIGGYBACK, AGAIN, THIS CONCEPT TESTING

4    OF THE GOGGLES AND THE QUALITY OF ATN'S GOGGLES VERSUS REALLY

5    ADDRESSING WHAT'S CHARGED, WHAT'S IN THE INDICTMENT.

6            WE'VE BEEN TRYING TO MAKE CLEAR FROM THE BEGINNING,

7    MR. PRILIK MADE CERTAIN STATEMENTS TO THE VICTIM, THE ARMY, AND

8    DIDN'T PROVIDE ALL OF THE INFORMATION.

9            AND THE KEY TO THE STATEMENTS MR. PRILIK MADE ARE NOT

10   WHETHER OR NOT THEY'RE TRUE OR NOT TRUE, WHETHER YOU BELIEVE

11   THEM TO BE TRUE OR NOT, IT'S PART OF THE RUSE.  SOME TYPE OF

12   INFORMATION HAD TO BE PROVIDED IN ORDER FOR THE ARMY TO BELIEVE

13   THAT ATN COULD NOT PERFORM.

14           BECAUSE THE DEFENDANTS DID NOT -- WEREN'T -- DID NOT

15   DISCLOSE THE FACT THEY WEREN'T GOING TO PERFORM BECAUSE AN

16   AGREEMENT HAD BEEN REACHED TO PAY ATN TO WITHDRAW ITS TERMS, SO

17   THAT'S THE FIRST PART OF IT.

18           THIS CONSTANT ATTEMPT TO TRY TO ATTACK MR. ROCKLIN

19   VERSUS BECAUSE THERE'S THIS WHOLE OTHER PIECE IS NOT BEING

20   ADDRESSED, WHICH IS THE MATERIAL CONCEALMENTS.

21           AND IN TERMS OF MR. ROCKLIN'S CREDIBILITY, THE

22   CHARACTERIZATION BY THE DEFENDANT THAT HE KNEW OR

23   REPRESENTATIONS HE KNEW THAT THE QUALITY OF THE GOGGLES BEING

24   PROVIDED TO THE ARMY WERE LESS THAN WHAT HAD BEEN CERTIFIED,

25   THIS GETS BACK TO THE TESTING PIECE OF IT.

1        AGAIN, THERE ARE MULTIPLE WAYS OF TESTING.  THERE'S A

2   WAY OF TESTING IN RUSSIA, THERE'S A WAY OF TESTING IN THE

3   UNITED STATES, AND MR. ROCKLIN'S CREDIBILITY, AGAIN, FIGHT OVER

4   WHICH IS THE APPROPRIATE STANDARD OF TESTING IN ORDER TO SHOW

5   WHAT MR. ROCKLIN, HIS CREDIBILITY, WHAT IN FACT HE DID BELIEVE

6   WHAT HE SAID, HE WASN'T MAKING MISREPRESENTATIONS.

7        BUT THE ONLY WAY TO GET THERE IS IF BY, AGAIN, MAKING

8   THIS END RUN THROUGH THE TESTING OF THE QUALITY OF THE GOGGLES

9   AND THE TESTING OF THE GOGGLES.  DOESN'T GET TO THE POINT,

10  AGAIN, WHICH IS THE MATERIAL CONCEALMENTS.

11      **MR. HOWDEN:**  DOESN'T HAVE ANYTHING TO DO WITH THE

12  TESTING.  MR. ROCKLIN SAID, ITE, THIS IS GOING TO BE THE

13  QUALITY OF THE GOGGLES WE PROVIDED AND PUT A NUMBER VALUE ON

14  IT.

15      AND THE COURT OPINION DO CONCEDE THE GOVERNMENT'S

16  CERTIFIED STANDARDS FOR THOSE GOGGLES.  IN FACT, THE VERY

17  REASON THEY DON'T NEED LICENSES IS THEY DIDN'T MEET THAT

18  NUMBER, THEY MET A MUCH LOWER NUMBER AND DIDN'T COME ANYWHERE

19  CLOSE TO THE QUALITY MR. ROCKLIN CERTIFIES.

20      **THE COURT:**  GETTING BACK TO THE QUALITY.

21      **MR. HOWDEN:**  CREDIBILITY.

22      **THE COURT:**  THE ISSUE WHETHER OR NOT THE DEFENDANTS

23  MADE SOME KIND OF A DEAL WITH ATN, PAY THEM SOME MONEY OR THAT,

24  IN FACT, WOULD BE REFLECTED ULTIMATELY IN THE CONTRACT WITH THE

25  GOVERNMENT.

1          **MS. BOERSCH:** THAT'S NOT THE ONLY ISSUE, AND THIS

2  DOESN'T GO JUST TO QUALITY, GOES TO THE GOVERNMENT'S

3  CONTENTIONS AND THE GOVERNMENT'S THEORY MR. PRILIK WHEN HE'S

4  TALKING TO DMITRY IS CREATING THESE FALSE IMPRESSIONS THAT ATN

5  HAD PROBLEMS GETTING THIS STUFF OUT OF RUSSIA BECAUSE OF ITS

6  CUSTOMS, WELL, WHAT ATN DID, THERE'S NO FALSE IMPRESSIONS

7  THERE.

8          SO IT DIRECTLY REBUTS THE GOVERNMENT'S CONTENTIONS,

9  WHICH YOU'LL SEE IN THEIR JURY INSTRUCTIONS, SOMEHOW THOSE

10  STATEMENTS WERE DELIBERATELY MADE TO CREATE FALSE IMPRESSIONS.

11  THOSE STATEMENTS WERE TRUE AND THAT'S WHAT THIS GOES TO.

12          SO WHEN ROCKLIN SAID, SAYS HE WAS CREATING THAT FALSE

13  IMPRESSION WE WERE HAVING PROBLEMS AND THAT WASN'T TRUE WE WERE

14  NOT HAVING PROBLEMS, IT GOES TO ROCKLIN'S CREDIBILITY, GOES

15  DIRECTLY TO THAT.

16          IT'S MUCH BROADER THAN THAT.  DEFINITELY GOES TO

17  ROCKLIN'S CREDIBILITY ON THE CONCEALMENT ISSUE, WHICH THEY KEEP

18  GOING BACK TO.

19          AND THIS, AGAIN, WILL BE RAISED IN THE JURY

20  INSTRUCTIONS, THERE HAS TO BE A DUTY ON OUR PART TO MAKE A

21  DISCLOSURE, WE HAD NO CONTRACTUAL RELATIONSHIP WITH, NONE OF

22  OUR CONTRACTUAL RELATIONSHIP WAS WITH ITE, WE DON'T HAVE ANY

23  DUTIES TO DISCLOSE TO TACOM AND THAT'S GOING TO BE AN ISSUE

24  THAT'S GOING TO HAVE TO BE RESOLVED.

25          **THE COURT:** I DON'T THINK THE CASE LAW SUPPORTS A

```
1   REQUIREMENT FOR DUTY EITHER.

2           MS. BOERSCH:  I THINK IT DOES.

3           THE COURT:  YOU FOUND SOME LANGUAGE THAT WAS AN

4   ENTIRELY DIFFERENT SITUATION?

5           MR. WARD:  YOUR HONOR IS ABSOLUTELY RIGHT ON THE DUTY

6   TO DISCLOSE, AND COUNSEL IS RIGHT WHEN THEY SAY THIS CASE --

7   ANSWER IS RIGHT THIS CASE IS ABOUT THE CONCEALMENT, THE

8   CONCEALMENT OF MATERIAL INFORMATION FROM PRILIK.

9           NEVER TALK ABOUT THE SECRET AGREEMENT, THE $350,000

10  PAYOFF, THE AGREEMENT TO PAY HIM 75 BUCKS A GOGGLE WHEN THEY

11  WITHDREW AND NEW CONCEPTS, IN THAT'S THE FRAUD WE ALLEGE, THE

12  FRAUDULENTLY CONCEALED FROM TACOM.  IT'S MATERIAL.

13          IT'S NOT ABOUT THE QUALITY OF THE GOGGLES, AS THE

14  DEFENDANTS WANT TO MAKE IT ABOUT THE QUALITY OF THE GOGGLES, IN

15  TERMS OF THE CASES FROM RUSSIA.

16          COUNSEL SAYS THIS RUSSIAN COURT FOUND THEIR GOGGLES

17  DIDN'T MEET THE QUALITY STANDARD AND, THEREFORE, ERGO THEY

18  DIDN'T MEET ATN'S QUALITY STANDARD OR THE ARMY'S QUALITY

19  STANDARDS, ERGO WE DIDN'T INTEND TO DEFRAUD TACOM.

20          IT'S TOO TENUOUS OF A LINK.  IT ASSUMES WE DON'T KNOW

21  WHAT STANDARD THEY WERE USING TO TEST GOGGLES IN RUSSIA.  THEY

22  UNDERSTAND THERE ARE DIFFERENT TESTING STANDARDS AND HOW ARE WE

23  GOING TO SET THAT UP.

24          ARE WE GOING TO HAVE A MINI-TRIAL OVER WHAT THE

25  RUSSIAN COURT LOOKED AT IN TERMS OF THEIR TEST, TECHNICAL
```

STANDARDS FOR MEASURING THE QUALITY OF THE GOGGLES THEY WANTED

EXPORTED.

HOW WOULD THAT COMPARE TO THE STANDARD TACOM SAID, HOW

DID THAT COMPARE TO WHAT THE U.S. ARMY WANTED?

YOU END UP JUST LIKE YOU DID WITH THE EXPERT, YOU HAVE

A MINI-TRIAL OFF A TECHNICAL SCIENTIFIC DEBATE OVER HOW YOU

MEASURE THE QUALITY OF GOGGLES.  AND IT'S NOT AN ISSUE HERE.

THE ARMY GOT THE GOGGLES IT WANTED, IT WAS SATISFIED

WITH ATN'S GOGGLES.  THE DEFENDANTS WERE NOT HAPPY WITH THAT,

SO THEY PAID THEM OFF, SO THEY WOULD STEP OUT OF THE WAY, SO

THAT THEY COULD STEP IN AND BOOST THE PRICE.

**THE COURT:**  IS THERE GOING TO BE ANY TESTIMONY FROM

MR. ROCKLIN ELICITED BY THE GOVERNMENT ABOUT THE ABILITY TO GET

THESE GLASSES OR GOGGLES OUT OF RUSSIA OR INTO RUSSIA, WHATEVER

THE PROBLEM WAS IN RUSSIA?

**MR. WARD:**  THERE IS DISCUSSION IN THE CONVERSATION

BETWEEN DMITRY ROCKLIN AND MENDEL BEKER ABOUT THE PROBLEMS THAT

ATN WAS HAVING GETTING ITS GOGGLES OUT OF RUSSIA.

MR. ROCKLIN BELIEVES THAT THAT THOSE WERE PROBLEMS

GENERATED BY MR. BEKER'S COHORTS IN RUSSIA.  THE FACT MR. BEKER

CONFIRMS AT SEVERAL POINT DURING THE CONVERSATIONS, THE

DEFENDANTS HAVE SOUGHT TO KEEP THAT IN.

IF THIS COURT WERE TO PREFER WE CAN KEEP ALL OF THAT

OUT BECAUSE IT'S NOT RELEVANT TO WHAT'S CHARGED HERE.

**THE COURT:**  WELL, IF IT'S NOT RELEVANT TO WHAT'S

1    CHARGED HERE, WHY WOULD YOU PUT IT IN?

2         **MS. HAMILTON:**  IN TERMS OF, TO EXPLAIN THE

3    CONVERSATIONS BETWEEN MR. BEKER AND MR. ROCKLIN TO PROVIDE

4    CONTEXT.

5         **MR. HOWDEN:**  THE GOVERNMENT'S ALLEGED IT'S 404(B)

6    INFORMATION.  AS I SAID, THEY PROVIDED YOU WITH ENTIRE BINDER

7    OF TRANSCRIPT AND HIGHLIGHTED PORTIONS THAT GO TO THAT.

8         **MS. HAMILTON:**  WE ACTUALLY MADE THAT SPECIFIC POINT

9    THIS PART WAS INTERTWINED.

10        **THE COURT:**  IT SEEMS LIKE YOU CAN'T HAVE IT BOTH WAYS.

11   IN FACT, YOU'RE GOING TO PRODUCE THAT EVIDENCE, THEY'RE GOING

12   TO HAVE TO BE ABLE TO REBUT IT AND SAY, IN FACT, THAT WAS NOT

13   WHAT WAS INTENDED, SO ON AND SO FORTH.

14        **MS. HAMILTON:**  YOUR HONOR, WE CAN, I THINK, SAFELY SAY

15   WE CAN EXCISE THAT PART OUT OF THE CASE IN CHIEF.

16        **MR. HOWDEN:**  I WANT TO STRESS, I'M NOT INTERESTED IN

17   GOING INTO TESTING TECHNIQUES, I'M TALKING ABOUT -- AND HOW

18   THESE THINGS WERE MEASURED IN RUSSIA AND HOW THINGS WERE

19   MEASURED IN THE UNITED STATES.

20        MR. ROCKLIN SAID IN HIS CONTRACT THIS IS THE NUMBER

21   QUALITY, NOT THE ONES THAT WERE IN THE SPECIFICATIONS EITHER,

22   THIS IS THE NUMBER, THE PHOTO SENSITIVITY OF THESE ARE GOING TO

23   BE 600.  AND THE COURT RECORDS SAYS YOU CAN'T EXPORT THESE AND

24   WE'RE GOING TO LET YOU OFF THE HOOK BECAUSE IT'S ONLY 350

25   MAXIMUM, THEREFORE, YOU CAN EXPORT THEM WITHOUT A LICENSE.

1        THE TWO ARE COMPLETELY INCONSISTENT, AND TO THE EXTENT

2  MR. ROCKLIN SAYS I TOLD MY CONTRACTOR TRUTHFUL INFORMATION

3  ABOUT THE QUALITY OF THE GOGGLES, THAT'S JUST NOT TRUE.

4        **THE COURT:**  ARE WE TALKING ABOUT THE ITE NOW AND

5  RUSSIA?

6        **MR. HOWDEN:**  NOT ITE IN RUSSIA, WE'RE TALKING ABOUT

7  THE PRODUCT ROCKLIN WAS SUPPLYING THAT EVENTUALLY WENT TO THE

8  UNITED STATES MILITARY.

9        HE HAD TO STATE WHAT THE QUALITY OF THOSE GOGGLES

10  WERE, AND HE MADE VARIOUS REPRESENTATIONS ABOUT THE QUALITY AND

11  THEY WEREN'T TRUE AND THE COURT RECORD SHOW THEY WEREN'T TRUE.

12        **MS. HAMILTON:**  JUST TO MAKE IT VERY CLEAR, THOUGH,

13  MR. HOWDEN'S ARGUMENT THE REASON WHY THERE'S A PROBLEM IN

14  RUSSIA, THE GOGGLES WERE MEASURED BY PHOTO SENSITIVITY NUMBERS,

15  THEY USE DIFFERENT TERMS, SIGNAL TO NOISE RATIO.

16        AND, AGAIN, IT'S TIME TO CONFLATE THE TWO, THE WAY

17  THEY'RE MEASURED AND THE NUMBERS THAT ARE TAKEN.  NOT EVEN A

18  TEST OF MEASUREMENT THAT'S USED IN THE RUSSIA SYSTEM.

19        AGAIN, WE'RE GOING TO GET BACK TO THIS CONSTANT DEBATE

20  AND FIGHT ABOUT WHAT THE TESTING METHODOLOGY WAS.

21        **THE COURT:**  THE QUESTION WHETHER OR NOT ANY OF THESE

22  REPRESENTATIONS MADE TO THE U.S. GOVERNMENT WERE BY MR. ROCKLIN

23  WERE INCORRECT AND FALSE, AND CERTAINLY THEY HAVE -- THEY'RE

24  ENTITLED TO TRY TO IMPEACH HIM ON THOSE.

25        NOW, I DON'T KNOW TO WHAT EXTENT IN ORDER TO DO THAT

```
1    IT REQUIRES GOING BEHIND THE NUMBER THAT HE GAVE THEM OR THE

2    INFORMATION HE GAVE THEM, BUT IT SOUNDS TO ME, JUST FOR

3    IMPEACHMENT PURPOSE AND NOT FOR PROVING UP ANY OF THE ACTUAL

4    CHARGES HERE.  AM I CORRECT?

5         MR. HOWDEN:  THAT'S CORRECT.

6         THE COURT:  SO I DON'T KNOW IF YOU CAN AVOID THAT

7    PROBLEM.  I MEAN, IF IN FACT YOU DON'T, IS THERE A WAY OF

8    TRYING IT WITHOUT ELICITING THE KIND OF TESTIMONY THAT WOULD

9    THEN MAKE THAT RELEVANT?

10         BECAUSE OTHERWISE MIGHT BE IMPEACHMENT ON COLLATERAL

11   MATTERS.

12         MR. WARD:  I THINK WE --

13         THE COURT:  JUST CAN'T LET IT IN AND HAVE HIM TESTIFY

14   ABOUT IT IF, IN FACT, THERE'S IMPEACHING EVIDENCE.  EVEN THOUGH

15   IT MAY COME TO, YOU KNOW, A COUNTRY WE CAN'T GET ANYTHING FROM.

16         MR. HOWDEN:  I THINK, IT'S IMPEACHMENT.

17         THE COURT:  MAYBE ENTITLED TO GO INTO.

18         MR. HOWDEN:  WHETHER OR NOT THE GOVERNMENT ELICITS

19   THAT TESTIMONY, THE FACT OF THE MATTER IS, THAT WE BELIEVE AND

20   WE CAN PROVE MR. ROCKLIN MADE FALSE STATEMENTS.

21         THE COURT:  TO WHOM?

22         MR. HOWDEN:  BOTH THE ARMY AND HIS PRIME CONTRACTOR

23   ITE.

24         THE COURT:  THE DOCUMENTS IN RUSSIA WERE TO THE,

25   WRITTEN BY MR. ROCKLIN, HIS NAME APPEARS NO WHERE IN THOSE
```

1    DOCUMENTS, THOSE ARE REPRESENTATIONS MADE BY A BROKER HIRED BY

2    ATN TO PROVIDE TO EXPORTERS OF THE GOGGLES INTO THE UNITED

3    STATES.

4         IS THE NOTION THAT, IN FACT, MR. ROCKLIN, THAT MATTERS

5    THAT ROCKLIN REPRESENTED TO THE U.S. GOVERNMENT, TO TACOM, OR

6    THROUGH -- WOULDN'T BE A CONTRACTOR TO TACOM, THAT THOSE ARE

7    CONTRADICTED BY STATEMENTS THAT HE MADE IN RUSSIA?

8         **MR. HOWDEN:**  NOT STATEMENTS HE MADE, FINDINGS OF THOSE

9    COURTS AS TO WHAT THE VALUES HE WAS IMPORTING AND SAID HE WAS

10   IMPORTING, WHAT THEY REALLY, WHAT THE VALUES OF THEM REALLY

11   WERE.

12        **MR. OSTERHOUDT:**  THERE IS THE VALUE OF THEM, THAT'S

13   WHAT IT IS.

14        **MR. HOWDEN:**  WE'RE NOT TALKING ABOUT FOM, WE'RE NOT

15   REFERRING TO FOM AT ALL, WE'RE TALKING ABOUT PHOTOCATHODE

16   SENSITIVITY.  NO ISSUE IN THE CASE IT'S MEASURED DIFFERENTLY IN

17   RUSSIA AND DIFFERENTLY IN THE UNITED STATES.  IT'S THE SAME

18   EVERYWHERE.

19        THE RUSSIAN COURT SAID THESE WERE MAXIMUM 350,

20   MR. ROCKLIN SAID TO EVERYBODY, NO, THEY'RE REALLY 600.

21        **MS. HAMILTON:**  WHAT MR. ROCKLIN SAID, HERE'S

22   CERTIFICATION FROM MY SUPPLIER WHO CERTIFIES THIS IS THE

23   NUMBER, THAT IT MEETS THE CONTACT SPECIFICATION.  HE RELIED ON

24   HIS SUPPLIER WHO WAS TESTING AND PROVIDING THE INFORMATION AND

25   WHAT THE INFORMATION CONTAINED IN RUSSIA WAS.

1    WE HAVE NO IDEA WHETHER ATN SAW THOSE REPRESENTATIONS

2    OR WAS PART, THEY WEREN'T A NAMED PARTY TO THESE PROCEEDINGS.

3    AND SO IT BECOMES KIND OF A, AGAIN, ATTENUATED TO SOMEHOW TAKE

4    THESE PROCEEDINGS IN RUSSIA, AND WHICH ATN WASN'T A PARTY, ATN

5    MADE NO REPRESENTATIONS IN ANY OF THOSE PROCEEDINGS, AT LEAST,

6    THAT WE'VE SEEN FROM THE DEFENDANT'S PRODUCTION, AND THEN TRY

7    TO TAKE THAT AND BOOTSTRAP IT ON IN A WAY TO IMPEACH

8    MR. ROCKLIN.

9    THERE'S THE CUSTOM'S DECISIONS, WE DON'T KNOW IF ATN

10   WAS INVOLVED.  CERTAINLY NO STATEMENTS FROM, MR. ROCKLIN MADE

11   NO STATEMENTS.  THERE IS THE ONLY STATEMENTS HE RELIED ON WERE

12   THOSE BY HIS SUPPLIER.  THAT WAS THE INFORMATION THEN PROVIDED

13   TO THE MILITARY TO SHOW WHAT THE BASIS FOR THEIR MEASUREMENTS,

14   THE REPRESENTATIONS MADE BY ATN TO BE.

15   **MR. WARD:**  I THINK, IT'S INCORRECT TO SAY, WELL, THIS

16   COURT FOUND THIS AND, THEREFORE, THE PHOTOCATHODE SENSITIVITY

17   WAS THIS AND, THEREFORE, HE'S LYING.

18   YOU THINK YOU'D HAVE TO MAKE THREE OR FOUR STEPS TO

19   SAY, WELL, WHEN YOU MULTIPLY THIS BY THIS FACTOR, AND YOU DON'T

20   USE SIGNAL TO NOISE BUT YOU USE PHOTOCATHODE SENSITIVITY, YOU

21   MULTIPLY IT BY RESOLUTION, WE ADD UP THESE NUMBERS AND COMES

22   OUT AT 350 AND NOT 600.

23   DOESN'T TAKE INTO ACCOUNT DIFFERENT TESTING

24   METHODOLOGY, THE USE OF A DIFFERENT STANDARD.  NOTHING IN THE

25   TACOM CONTRACT REFERRED TO PHOTOCATHODE SENSITIVITY, NOTHING

REFERS TO A FOM, WHICH IS A DIFFERENT STANDARD THEN WHAT I

UNDERSTAND MR. HOWDEN SAYS THE COURT IN RUSSIA CONCLUDED.

SO YOU HAVE TO GET FROM PHOTOCATHODE SENSITIVITY TO

FIGURE OF MERIT FOM AND HOW ARE WE GOING TO GET THERE.  WHAT'S

THE RELIABILITY.  WE COULD CALL A BUNCH OF EXPERTS WHO COULD

TALK ABOUT THE DIFFERENT WAYS TO MEASURE THAT.

**THE COURT:**  WE'VE BEEN DOWN THAT ROAD.

**MR. HOWDEN:**  THAT'S NOT WHAT I INTEND TO DO.  WE'RE

TALKING ABOUT THE NUMBERS ACROSS THE BOARD, WE'RE NOT TALKING

ABOUT THE SPECIFICATION IN THE CONTRACT.

WE'RE TALKING ABOUT A DIFFERENT SINGLE MEASURE OF

QUALITY MR. ROCKLIN SAID INCLUDING IT IN THE NUMBER THAT HE

PROVIDED BOTH TO HIS SUBCONTRACTOR AND TO THE ARMY, MY TUBES

WILL MEET THIS NUMBER FOR PHOTOCATHODE SENSITIVITY.

THE RUSSIAN COURT SAID YOU GET TO EXPORT THESE TO THE

UNITED STATES BECAUSE IF PHOTOCATHODE SENSITIVITY IS ALMOST

HALF WHAT YOU'RE REPRESENTING OVER THERE.  AND THERE'S NO

COMPUTATION INVOLVED, SAME NUMBERS, THE SAME MEASUREMENT.

THERE'S NO ALLEGATION THEY'RE MEASURED DIFFERENTLY IN RUSSIA

AND MEASURED DIFFERENTLY HERE.

WHAT MR. ROCKLIN SAID ABOUT HIS PRODUCT WHEN HE SOLD

THEM BOTH TO ITE AND TOLD THE MILITARY OR ALLEGED TO THE

MILITARY, WHAT KIND OF QUALITY.

**THE COURT:**  IS ANY OF THIS WHAT WE'RE GOING TO SEE IN

THE RUSSIA RECORD PREMISED ON WHAT MR. ROCKLIN TOLD?

1        **MR. HOWDEN:**  NO.  IT MAKES CLEAR REFERENCE TO THE

2   CONTRACT BETWEEN ATN AND THE SUPPLIER IN RUSSIA WHO'S GOODS ARE

3   BEING SEIZED AT THE VERY TIME, AT THE VERY TIME THAT

4   MR. ROCKLIN IS TALKING TO MR. BEKER ON THE PHONE AND SUPPOSEDLY

5   ACCUSING HIM OF ORCHESTRATING THIS PROBLEM THAT HE'S HAVING IN

6   RUSSIA.

7        AND, AGAIN, WE CAN TIE THESE SAME GOGGLES, SAYS IT

8   FLAT OUT THESE GOGGLES ARE BEING SENT FROM MOSCOW TO ATN FOR A

9   CONTRACT, GIVES SERIAL NUMBERS, WE CAN TRACE THOSE SERIAL

10  NUMBERS THROUGH TO THE ACTUAL GOOGLES WERE PRODUCED IN IRAQ.

11       AND, YOU KNOW, DON'T EVEN CARE WHAT THE ACTUAL MINUTES

12  ENDED UP SAYING, THE POINT IS THAT DEMONSTRATE THAT WHAT WAS AT

13  ISSUE WAS THESE GOGGLES, THAT INDISPUTABLY HAD A MAXIMUM VALUE

14  PHOTOCATHODE SENSITIVITY OF 350 WERE BEING SHIPPED TO ATN IN

15  CONNECTION WITH THIS CONTRACT, THE CONTRACT THAT'S AT ISSUE

16  HERE.

17       OKAY.  WELL, I THINK, WHAT YOU HAVE TO DO IS PUT A

18  PROFFER IN WRITING.

19       **MR. HOWDEN:**  VERY GOOD.

20       **THE COURT:**  YOU CAN RESPOND TO IT.

21       **MS. HAMILTON:**  THANK YOU.

22       **THE COURT:**  BUT, YOU KNOW, ONE OF THE OTHER PROBLEMS,

23  IS WE DON'T KNOW WHAT THE -- WHAT THAT COURT IN RUSSIA HAD

24  BEFORE IT TO MAKE DETERMINATION THAT IT MADE.  APPARENTLY, NO

25  REPRESENTATION MADE BY MR. ROCKLIN TO THE RUSSIAN GOVERNMENT,

1  RIGHT?

2           **MS. HAMILTON:**  THAT'S RIGHT.

3           **THE COURT:**  ANYBODY OF A RUSSIAN COURT OR THINKING

4  LIKE THAT, THAT'S A DETERMINATION THAT THEY MADE, AND YOU'RE

5  GOING TO TRY TO IMPEACH HIM WITH THAT, BUT THIS HAS NOTHING TO

6  DO WITH ANYTHING HE EVERY SAID.

7           **MR. HOWDEN:**  HE CAN SAY THAT I DIDN'T KNOW OR I RELIED

8  ON MY SUPPLIER, HE'S ENTITLED TO SAY THAT.  BUT I'M ALSO

9  ENTITLED TO SHOW CIRCUMSTANTIALLY HE HAD TO KNOW AND THAT WHEN

10  HE MADE THESE OTHER REPRESENTATIONS, BOTH TO THE GOVERNMENT AND

11  TO ITE, THAT AT BEST HE'S BEING DISINGENUOUS ABOUT HIS

12  REPRESENTATIONS.

13           **THE COURT:**  WELL, BUT IN ORDER TO GET THOSE RECORDS IN

14  YOU HAVE TO UNDERSTAND THE SOUNDNESS OF THEM AND THE QUALITY OF

15  THEM AND SO FORTH.

16           **MR. HOWDEN:**  THAT'S CORRECT.

17           **THE COURT:**  THINK THERE'S A REAL PROBLEM.

18           **MR. OSTERHOUDT:**  LET US PUT IT IN WRITING, BE AS CLEAR

19  AS POSSIBLE.

20           **THE COURT:**  HAVE YOU LOOKED AT THE CASE LAW THAT WOULD

21  ALLOW FOR THAT KIND OF A SUBSTITUTE FOR THE ACTUAL

22  CERTIFICATION REQUIRED BY 902 OR WHAT MAYBE REQUIRED UNDER

23  3505?

24           **MR. HOWDEN:**  WE WILL CITE TO YOU WHAT WE HAVE.

25           **THE COURT:**  DO YOU HAVE ANYTHING?

1          **MR. HOWDEN:**  NOT OFF THE TOP OF MY HEAD.

2          **THE COURT:**  HAVE YOU LOOKED TO SEE IF THERE IS

3    ANYTHING?  THAT'S WHAT I MEAN.

4          **MR. HOWDEN:**  NOT A VERY THOROUGH SEARCH.

5          **THE COURT:**  WHEN CAN YOU GET ALL OF THAT IN?

6          **MR. HOWDEN:**  EARLY NEXT WEEK.  MONDAY OR TUESDAY.

7          **THE COURT:**  GET IT IN BY 4:00 O'CLOCK MONDAY.

8          **MR. HOWDEN:**  VERY GOOD.

9          **THE COURT:**  YOU HAVE TO RESPOND.  BUT WE'RE RUNNING

10   RIGHT UP AGAINST THE TRIAL DATE.  AND IF IT'S NOT, IF IN FACT

11   IT'S NOT GOING TO BE ADMISSIBLE, THEN WHAT ARE YOU GOING TO DO,

12   YOU STILL CONTINUING TO TRY TO GET WHATEVER YOU CAN GET FROM

13   RUSSIA?

14         **MR. HOWDEN:**  WELL, WE WILL TRY TO GET WHAT WE CAN FROM

15   RUSSIA AND WE'LL MOVE AHEAD WITH THE TRIAL.

16         **THE COURT:**  ON THE DATE THAT'S NOW SET?

17         **MR. HOWDEN:**  I BELIEVE SO, YES.

18         **MS. HAMILTON:**  AND IN TERMS OF THE SCHEDULING, IT WAS

19   RAISED BUT I DON'T THINK WE ACTUALLY CAME TO A DECISION ON IT,

20   JUST COUNTING, WE HAVE -- RIGHT NOW LOOKS LIKE WE HAVE SEVEN

21   COURT DAYS, BUT IT SEEMS ALSO, AT LEAST, THERE'S BEEN CONSENSUS

22   PROBABLY 10, NOT COUNTING JURY UNDER THE CURRENT SCHEDULE, NOT

23   COUNTING IMPANELING THE JURY, WHAT'S GOING TO BE REQUIRED.

24         SO THAT'S MATH, I THINK, WE CAN ALL AGREE ON, THAT

25   IT'S LESS THAN WHAT WE BELIEVE WILL TAKE IN ORDER TO COMPLETE

1    THIS CASE.

2          **MR. HOWDEN:**  THAT'S WHY WE ASK THE COURT'S ASSISTANCE

3    IN TRYING TO ENLARGE THE AMOUNT OF TIME WE HAVE TO TRY THIS

4    CASE AND STILL BE DONE BY DECEMBER 2ND.  PERHAPS, GOING LONGER

5    DURING THE DAY OR CONSIDERING OTHER DAYS TO INCLUDE IN THE

6    TRIAL.

7          **MR. OSTERHOUDT:**  I THINK, THE TRIAL HAS BEEN EFFECTED

8    BY SOME THE COURT'S RULINGS.  WE HAD SOME EXPERT TESTIMONY WE

9    THOUGHT WAS RELEVANT THAT YOUR HONOR DIDN'T THINK THAT AND

10   THAT'S FINE.  SO, I THINK, EVERYBODY DOING THE BEST THEY CAN TO

11   TRIM THE CASE, BUT MAYBE WE COULD USE A LITTLE ASSISTANCE IN

12   THAT REGARD TO TRY TO GET IT ALL IN.

13         **MR. WARD:**  JUST OUR UNDERSTANDING IS THAT WE WOULD

14   PICK A JURY ON WEDNESDAY THE 10TH, THE 11TH IS VETERAN'S DAY,

15   SO WE'RE OFF THE 12TH, THAT FRIDAY WE AGREE WE'RE OFF BECAUSE

16   IT'S A FRIDAY, WE DON'T WANT TO KEEP THE JURORS HERE.

17         **THE COURT:**  WE DON'T HAVE TO, WE COULD BRING THEM BACK

18   ON FRIDAY.

19         **MR. WARD:**  POSSIBILITY.  GIVES US FOUR DAYS THE

20   FOLLOWING WEEK.

21         **THE COURT:**  THEY'LL GET MAD AT ME.

22         **MR. WARD:**  FOUR DAYS, ONE DAY THE FOLLOWING WEEK

23   THAT'S THE 23RD BECAUSE THEN YOU HAVE THE 24TH WEDNESDAY BEFORE

24   THANKSGIVING, AND THANKSGIVING AND THE DAY AFTER AND IF WE

25   BRING THEM BACK THE DAY AFTER THANKSGIVING THEY'LL HATE ALL OF

US.

THEN YOU GOT THE 30TH AND YOU GOT THE 1ST AND YOUR HONOR TALKING ABOUT THE 24TH WHICH IS A WEDNESDAY, IF WE BRING A JURY IN HERE UNTIL 1:30 OR 2:00 ON THE DAY BEFORE THANKSGIVING.

**THE COURT:**  WOULD IT MAKE MORE SENSE TO JUST TRY THIS THING IN JANUARY?

WOULDN'T HAVE ALL OF THESE, WOULDN'T HAVE ALL OF THESE PROBLEMS.  YOU MIGHT HAVE MORE ANSWERS TO SOME OF YOUR QUESTIONS WITH RESPECT TO THE RUSSIA RECORDS IF, IN FACT, YOU GET THEM IN AND --

**MS. HAMILTON:**  WOULDN'T BE SO BROKEN UP.

**THE COURT:**  WOULDN'T BE SO BROKEN UP, AND ALSO JURIES -- DURING THE HOLIDAY TIME IT'S DIFFICULT TO GET JURIES.

**MR. OSTERHOUDT:**  MIGHT SOUND -- I DON'T KNOW HOW IT SOUNDS TO YOU, FROM -- I KNOW MR. PRILIK PRETTY WELL OVER THESE MONTHS, HIS SON'S BARMITZVAH THE 16TH OF DECEMBER.  IT'S AN ENORMOUS EVENT FOR HIM.  I PROMISED HIM THAT -- YOUR HONOR INDICATED YOU DIDN'T THINK APPROPRIATE FOR THE DEFENDANT TO GO HOME, WE CAN GET IT IN.

I PERSONALLY THINK BOTH OF THESE GENTLEMEN HAVE ESTABLISHED SUCH A TRACK RECORD BY NOW THEY COULD BE TRUSTED. THEY BOTH HAD -- MR. BEKER HAD HIS PASSPORT WENT TO NEW YORK, HE COULD HAVE GONE TO CANADA, EITHER COULD GET ON A TRAIN AND GO TO CANADA IF THEY WERE DISPOSED TO VIOLATE THE COURT'S

ORDER.  THAT'S MY GREAT RELUCTANCE HERE TO KICK THE CASE OVER

UNTIL JANUARY.

I REALLY THINK IT IS VERY, VERY IMMENSE PERSONAL

IMPORTANCE, THE FAMILY IS THERE, LIFE IS THERE, THEIR BUSINESS,

BUT ABOVE ALL ELSE PERSONAL THINGS LIKE THAT MEANS SO MUCH TO

HIM.  THAT'S THE REASON, THAT'S WHAT MOTIVATES ME TO HOPE WE

CAN GET IT IN.

UNLESS WE CAN ARRANGE TO ALLOW THEM TO DO THAT UNDER

WHATEVER TERMS WOULD BE SATISFACTORY TO THE COURT AND THE

GOVERNMENT.

**MR. HOWDEN:**  MY CLIENT IS FIRST AND FOREMOST

INTERESTED IN HAVING A FULL AND FAIR HEARING OF ALL THE MERITS

OF THIS CASE.  WE HOPE TO BE ABLE TO DO THAT WITHIN THE TIME

ALLOTTED BEFORE DECEMBER 2ND.

HE'S BEEN HERE A LONG TIME.  HE'S BEEN FAITHFUL TO

EVERY ORDER COURT.  HE WANTS TO GET THIS OVER WITH ONE WAY OR

THE OTHER AND PUT IT BEHIND HIM.

TO ASK HIM TO SIT ANOTHER TWO MONTHS BECAUSE IT'S MORE

CONVENIENT FOR SCHEDULING PURPOSES IS JUST VERY HARD FOR HIM.

IT'S VERY HARD FOR HIM, HIS BUSINESS, HIS FAMILY, IT'S ALL AT

RISK.

AND THAT'S WHY WE'RE SO ANXIOUS TO GET THE CASE TO

TRIAL.  IF IT HAS TO BE KICKED OVER, I WOULD ASK THE COURT

SERIOUSLY CONSIDER LETTING HIM TRAVEL BACK TO CANADA.

I KNOW THE GOVERNMENT IS OPPOSED TO IT VEHEMENTLY.  IF

HE WANTED TO GO HE COULD HAVE GONE A LONG TIME AGO.  HE HAD HIS

PASSPORT TIME AND AGAIN.  HE DOESN'T NEED HIS PASSPORT TO GO

BACK IF THAT'S WHAT HE INTENDS TO DO.

LET ME ADD THIS, TOO.  BOTH THESE DEFENDANTS, AS A

PRACTICAL MATTER, THEY DID WHAT THE GOVERNMENT FEARS, DECIDED

NOT TO COME BACK HERE, THEY'RE GOING TO GET THROWN IN JAIL IN

CANADA, THEY'RE NOT GOING TO MAKE BAIL, THEY HAVE ANY INTENTION

NOT TO COME BACK.  THEY WANT TO PUT IN BEHIND THEM, WIN LOSE OR

DRAW.

SO IF WE ARE GOING TO SERIOUSLY CONSIDER PUTTING IT

OVER, I WOULD ASK YOUR HONOR EQUALLY TO SERIOUSLY CONSIDER

LETTING THEM TO GO BACK FOR CANADA.

**MS. BOERSCH:**  SOME PERIOD OF TIME, SO HE CAN GO TO FOR

HIS SON'S BARMITZVAH.

**MS. HAMILTON:**  IN TERMS OF, I THINK, THE FIRST THING,

IF THE DEFENDANTS WOULD NOT BE IMMEDIATELY THROWN IN JAIL IF

THEY REFUSED TO COME BACK.  WE LITIGATED THIS.

THE UNITED STATES WOULD HAVE TO FILE ANOTHER REQUEST

FOR EXTRADITION, THAT WOULD TAKE -- TOOK 18 MONTHS THIS TIME

AND AT THE END BECAUSE THE DEFENDANTS WAIVED THE FINAL STEPS IN

ORDER TO COME DOWN HERE.

**THE COURT:**  COULDN'T YOU WORK OUT AN AGREEMENT FOR

WAIVING EXTRADITION?

**MS. HAMILTON:**  THERE'S NO SUCH AGREEMENT, YOUR HONOR.

WE BEEN ACTUALLY THROUGH THIS WITH THE DEFENDANTS PREVIOUSLY

WITH THE OFFICE OF INTERNATIONAL AFFAIRS.  THERE'S NO WAY UNDER

THE TREATY WITH CANADA OR ANY OTHER COUNTRY TO CONTRACT THIS

ORDER TO MAKE, SO THE DEFENDANTS CAN AUTOMATICALLY WAIVE SOME

EVENT IN THE FUTURE, THAT WOULD THEN PERMIT CANADA TO ARREST

THE DEFENDANTS.  BOTH SIDES HAVE EXPLORED THIS VERY THOROUGHLY.

**MR. OSTERHOUDT:**  IT'S TRUE IN A SENSE.  ON THE OTHER

HAND, A WAIVER EXECUTED SOLEMNLY BY THEM WOULD LEAVE THEM

ABSOLUTELY DEFENSELESS IF WE EVER TRIED TO DEFEND AGAINST AN

EXTRADITION REQUEST.  WHO WOULD LISTEN TO THEM IF THEY'D DONE

THIS.

WE WENT THROUGH THAT BEFORE.  BUT, I MEAN, IT'S JUST

SO CLEAR TO ME THAT THEY WOULDN'T DO IT.  FOR ONE THING THEY

WOULDN'T DO, THEY'VE SHOWN THEIR GOOD FAITH, PRETRIAL THINK

WILL SUPPORT THIS PARTICULAR REQUEST.  BUT, I MEAN, IF THEY DID

DO IT NO COURT WOULD GIVE THEM THE TIME OF DAY, THIS COURT

WOULD GIVE THEM THE TIME OF DAY IN CANADA.

**MS. HAMILTON:**  THAT'S NOT WHAT THE CANADIAN OFFICIAL

TOLD US.  THEY'VE BEEN VERY CLEAR, EVEN WITH A WAIVER HAS NO

LEGAL IMPORT, THE COURTS WOULD NOT, AT LEAST, THAT'S WHAT WE'VE

BEEN TOLD, WOULD NOT RECOGNIZE IT OR ENFORCE IT.

**MR. HOWDEN:**  YOUR HONOR, WE'VE LITIGATED THIS, WE

ARGUED IT WITH THE GOVERNMENT.  WE THOUGHT WE ACTUALLY HAD

WORKED OUT A SOLUTION THAT WOULD PERMIT AFFECTIVELY A WAIVER.

BUT I DON'T WANT TO GO THROUGH THAT WHOLE HISTORY

AGAIN.  THINK THE BOTTOM LINE IS THERE'S NO EFFECTIVE WAIVER OF

1    EXTRADITION.

2            HOWEVER, IF THE DEFENDANTS APPEAR BEFORE YOU AND SWEAR

3    THAT THEY WILL SHOW UP FOR THE DAY OF TRIAL OR WHATEVER DAY YOU

4    ASK THEM TO BE HERE, AND THEN THEY GO BACK TO CANADA AND THEY

5    THUMB THEIR NOSES AT YOU LATER, THEY'RE NOT GOING TO MAKE BAIL

6    IN CANADA.  THEY WILL BE IN JAIL.  THEY WILL NOT MAKE BAIL.

7            AND EVEN IF THEY'RE PERMITTED TO GO THROUGH THE FULL

8    EXTRADITION PROCEEDINGS IT WILL BE WHILE THEY'RE IN CUSTODY,

9    AND THAT WILL PROMPT THEM TO GET DOWN HERE IN A HURRY.  NOT

10   THAT I HAVE ANY FEAR THAT'S WHAT ACTUALLY WOULD HAPPEN.

11           **THE COURT:**  WHAT ARE THEY FACING IN TERMS OF

12   PUNISHMENT?

13           **MS. HAMILTON:**  DEPENDING UPON THE SENTENCING

14   GUIDELINES AND HOW THEY'RE APPLIED, MR. BEKER FACES -- UP TO

15   108 MONTHS, DEPENDING UPON THE APPLICATION OF THE MONEY

16   LAUNDERING COUNT, MR. PRILIK APPROXIMATELY FOUR YEARS.

17           THE OTHER POINT I WOULD LIKE TO MAKE, TOO, BOTH OF

18   THESE INDIVIDUALS ARE CITIZENS OF OTHER COUNTRIES, WERE BORN IN

19   OTHER COUNTRIES BESIDES CANADA AS WELL.

20           **MR. OSTERHOUDT:**  IN THAT CONNECTION MR. BATENSKI VERY

21   REPUTABLE LAWYER IN CANADA AND ALSO COUNSEL FOR MR. BEKER, ALSO

22   SAID THEY WOULD RETAIN THE PASSPORT MR. PRILIK WILL BE ALLOWED

23   TO TRAVEL ON, THEY WOULD RETAIN AS OFFICERS OF THE COURT, THEY

24   WOULD KEEP IT THERE.

25           THEY EXECUTED DOCUMENTS SAYING THAT AND THEY WOULDN'T

GIVE IT BACK UNTIL IT'S TIME TO COME BACK AGAIN. AND, I THINK,

THESE GENTLEMEN HAVE SHOWN THEY CAN BE TRUSTED.

YOU DIDN'T KNOW THEM BEFORE, THE GOVERNMENT DIDN'T

EITHER FOR THAT MATTER. THEY'VE SHOWN THEY CAN BE TRUSTED,

MOST OF THE 18 MONTHS WAS SPENT, A LOT OF TIMES WE WERE TRYING

TO CONVINCE THE GOVERNMENT OF VERY POINT THE DEFENDANTS NOT --

THEY ALSO WANT TO RESIST EXTRADITION AND FIGHT FOREVER.

WE HOPED THEY COULD WORK SOMETHING OUT THEIR ATTORNEYS

TO BE ABLE TO COME BACK HERE AND GO HOME TO THEIR WIVES, AND

CHILDREN, AND BUSINESS, AND RELIGIOUS ACTIVITIES, THEY

COULDN'T, SO THEY CAME HERE ANYWAY.

I DO FEEL THEY HAVE A TRACK RECORD, RESPECTFULLY TO

YOUR HONOR, THEY WOULD NOT RUN AWAY.

**MS. BOERSCH:** I THINK, PARTICULARLY SINCE THIS WHOLE

TIME HAVE BEEN ABLE TO GO TO CANADA WITHOUT THEIR PASSPORT AND

THEY HAVEN'T. IT'S NOT THEY'VE BEEN HERE, THEY'VE BEEN ABLE TO

TRAVEL THEY COULD HAVE GONE, THEY HAVEN'T.

**MR. HOWDEN:** I HAVE TO CLARIFY FOR THE RECORD, YOUR

HONOR, MY CLIENT IS ONLY A CITIZEN OF CANADA, HE'S NOT A

CITIZEN OF ANY OTHER COUNTRY AND HAS NO PASSPORT TO ANY OTHER

COUNTRY.

HE'S HAD THAT PASSPORT ON, AT LEAST, TWO OCCASIONS

WHEN HE'S TRAVELED, WITH THE COURT'S PERMISSION, TO GO TO

BUFFALO, NEW YORK, TO CLEVELAND AND OTHER POINTS, HE'S VERY

CLOSE TO THE CANADIAN BORDER. HE PROMISED YOU HE'D COME BACK

1    AND HE DID COME, HE PROMISED YOU AGAIN HE WILL COME BACK.

2         **MS. BOERSCH:**  MR. PRILIK'S ISRAELI PASSPORT IS EXPIRED

3    AND IN THE CUSTODY OF THE CANADIAN AUTHORITIES.

4         **MR. OSTERHOUDT:**  I HAVE HIS U.S. PASSPORT.

5         **MS. HAMILTON:**  THE OTHER FACTOR THAT'S DIFFERENT HERE,

6    THEY'VE NOW HAD ACCESS TO THE DISCOVERY, THEY SEE THE EVIDENCE,

7    WHICH IS NOT WHERE THEY WERE PREVIOUSLY.

8         **MS. BOERSCH:**  I DON'T KNOW THAT'S, FRANKLY, NOT TO USE

9    A PUN, VERY WEIGHTY CONSIDERATION, GIVEN THEY'RE TAKING

10   ADVANTAGE OF THEIR CONSTITUTIONAL RIGHT TO A JURY TRIAL.

11        THEY WANT VERY MUCH TO EXERCISE THAT RIGHT.  THEY WANT

12   TO DO IT, AS MR. HOWDEN VERY ELOQUENTLY SAID, BOTH THESE

13   GENTLEMEN WANT A FULL AND FAIR OPPORTUNITY TO PUT THEIR CASE

14   ON, AS WELL AS REBUT THE EVIDENCE THAT'S PRESENTED BY THE

15   GOVERNMENT.

16        IT SOUNDS LIKE EVERYBODY IS IN AGREEMENT IT'S GOING TO

17   BE HARD TO DO THIS IN THE TIME ALLOTTED STARTING NOVEMBER 10.

18        **THE COURT:**  I'M CONCERNED BECAUSE OF ALL THE GAPS.

19   THERE ARE OTHER MATTERS, AND THE COURT DOES NOT HAVE THIS ONE

20   CASE ON ITS CALENDAR, I KNOW IT COMES AS A SHOCK TO YOU TO FIND

21   THAT OUT.

22        **MR. OSTERHOUDT:**  I THOUGHT THIS WAS IT.

23        **MS. MORMAN:**  WE THINK IT'S A REASONABLE REQUEST IN

24   LIGHT OF THEIR PERFORMANCE ON PRETRIAL RELEASE.  PRETRIAL WILL

25   SUPPORT THIS REQUEST TO ALLOW THEM TO GO, AS MS. BOERSCH

1    SUGGESTED, FOR FINITE PERIOD OF TIME TO CANADA, TO RUN ON A

2    DATE THAT YOU SPECIFY AND REPORT IN A WAY THAT YOU SPECIFY.

3              MR. PRILIK GOING TO BE WITH HIST TWO MINOR CHILDREN,

4    ONE WHOM IS TURNING 13.  AND HE'S A DEVOUT JEW, THEY'RE HAVING

5    A BARMITZVAH.  HE'S MISSED EVERY OTHER BIRTHDAY, EVERY OTHER

6    HOLIDAY, EVERY OTHER HIGH HOLIDAY THROUGHOUT THE TIME HE'S BEEN

7    HERE.

8              WE THINK COUNSEL FOR MR. BEKER AND COUNSEL FOR

9    MR. PRILIK WE BELIEVE DEMONSTRATED TRACK RECORD, ABILITY TO

10   CONTROL THE TRAVEL DOCUMENTS, THE FACT THEY HAVE COUNSEL IN

11   CANADA, WE DO BELIEVE AND PROFFER WE HAVE THE SUPPORT OF

12   PRETRIAL AND A WILLINGNESS TO COMPLY WITH OTHER TERMS AND

13   CONDITIONS YOU SET.

14             YOU SET A TRIAL DATE ON JANUARY 3RD, THEY'LL BE HERE.

15   IF YOU WANT THEM HERE ON DECEMBER 31ST, THEY'LL BE HERE.  BUT

16   IT SOUNDS LIKE THE CONSENSUS FROM YOUR HONOR IN PARTICULAR THAT

17   A TRIAL DATE IN JANUARY IS MORE LOGICAL FOR ALL THE REASONS

18   STATED.

19             AND WE THINK IT'S EQUALLY LOGICAL AND COMPELLING AND

20   SUPPORTED BY THE EVIDENCE TO ALLOW THEM TO TRAVEL BACK TO THEIR

21   HOME UNDER RESTRICTIONS.

22             **THE COURT:**  WELL, THE PROBLEM IS I CAN'T GOOD GIVE YOU

23   MONDAYS AT ALL BECAUSE THE CRIMINAL LAW AND MOTION IN THE

24   MORNING AND A CIVIL LAW AND MOTION IN THE AFTERNOON.  AND THERE

25   ARE TRO'S THAT COME IN, THERE ARE SOME, AS A MATTER OF FACT,

1    MATTERS WE HAVE PENDING THAT ARE GOING TO HAVE TO GO TO

2    HEARING, EVEN GIVING YOU SOME OF THE AFTERNOONS ON THE LONGER

3    DAY IS GOING TO BE A PROBLEM BECAUSE THERE ARE OTHER

4    EVIDENTIARY HEARINGS THAT ARE GOING TO HAVE TO BE SET AND OTHER

5    MATTERS SET.

6         SO THERE'S THAT PROBLEM.  I CAN SEE A REAL CRUNCH

7    COMING AS A RESULT OF THAT AND ALSO THE GAPS WE HAVE WITH

8    RESPECT TO JURORS THIS MONTH.

9         I CAN TELL YOU THAT MOST PEOPLE CELEBRATE THANKSGIVING

10   THE WEDNESDAY BEFORE, THANKSGIVING IS A DISASTER ZONE JUST IN

11   TERMS OF GETTING READY IF YOU'RE HAVING ANY RESPONSIBILITIES AT

12   ALL FOR YOUR THANKSGIVING DINNER.

13        I AVOID THAT BY GOING TO SOMEBODY ELSE'S HOUSE, BUT

14   OTHER PEOPLE MAY NOT BE SO FORTUNATE.  THE FRIDAY AFTER

15   THANKSGIVING YOU'RE NOT GOING TO KEEP JURORS HERE.

16        PROBABLY, WE COULD DO THE FRIDAY AFTER THE 11TH, THE

17   11TH IS A HOLIDAY AND SOME JURORS MAY BE UPSET ABOUT THAT, AND

18   THEN TRYING TO JAMB IT ALL IN AND RACE TO GET IT DONE,

19   DOESN'T -- CONCERNS ME BECAUSE I THINK IT'S NOT A VERY FAIR WAY

20   TO RUN A JURY TRIAL.

21        IT WOULD SEEM TO ME THAT IT MIGHT MAKE MORE SENSE TO

22   SET IT IN JANUARY AND FIND SOME TERMS AND CONDITIONS OF

23   RELEASE.  THEY DON'T COME BACK HERE THEY'LL BE A WARRANT OUT

24   FROM THE DAY THAT THEY DON'T SHOW UP.

25        AND, YOU KNOW, I THINK WE CAN STILL NONETHELESS GET A

1    WAIVER FROM THEM, AND IF UNENFORCEABLE, AT LEAST, THE COURT

2    WILL ENFORCE IT IN TERMS OF WHEN THEY FINALLY GET BACK HERE, IF

3    THAT'S WHAT SHOULD HAPPEN, BECAUSE THAT'S GOING TO MAKE THINGS

4    MUCH WORSE THAN THE AMOUNT OF TIME YOU'RE TALKING ABOUT THEN

5    ANYBODY MIGHT POSSIBLY GET.

6            **MS. HAMILTON:**  TRYING TO DETERMINE WHAT THE TERMS

7    WOULD BE THAT WOULD -- THE WAIVER IS NOT GOING TO BE RECOGNIZED

8    IN CANADA, UNDERSTAND WHAT YOU'RE SAYING YOU'LL BE RECOGNIZING

9    IT AND IF THEY COME BACK THEY'LL BE TREATED ACCORDINGLY.

10           I MEAN, IF THEY ARE PERMITTED TO RETURN I DO THINK

11   THERE HAS TO BE SOME TYPE OF ADDITIONAL BAIL OR SOMETHING TO

12   PROVIDE ADDITIONAL INCENTIVE.

13           **MR. HOWDEN:**  MY CLIENT PUT UP $750,000 IN CASH,

14   THERE'S --

15           **THE COURT:**  THAT WOULD BE GONE.

16           **MR. HOWDEN:**  THAT'S RIGHT.  AND, I THINK, IT'S NOT A

17   GOOD IDEA TO ADD TO THAT AT THIS POINT.

18           **MR. OSTERHOUDT:**  MR. PRILIK HAS A $650,000 LETTER OF

19   CREDIT HE POSTED.

20           **THE COURT:**  THAT'S DRAWN ON WHAT?

21           **MR. OSTERHOUDT:**  ON THE BANK.

22           **THE COURT:**  HIS BANK ACCOUNTS OR BANK ACCOUNTS?

23           **MR. OSTERHOUDT:**  BANK.

24           **MR. WARD:**  WE'VE ALSO WENT THROUGH THEIR ASSETS, MR.

25   BEKER'S OWNERSHIP OF NEWCON, MR. PRILIK'S ASSETS FROM HIS SALE

1  OF NEWCON, AND WE DON'T SAY IT'S INSIGNIFICANT AMOUNT OF MONEY,

2  OBVIOUSLY, BUT IN TERMS OF THE PERCENTAGE OF YOUR NET WORTH AND

3  WEIGHING THAT AGAINST SERVING TIME IN PRISON IN THE UNITED

4  STATES, WE WEIGHED THOSE CONSIDERATIONS AND DETERMINED, YOUR

5  HONOR DETERMINED IT WAS FINE TO KEEP THEM OUT OF CUSTODY WHILE

6  THEY WERE HERE, BUT INSUFFICIENT GIVEN ALL THE OTHER FACTORS.

7      **MS. MOORMAN:**  THERE'S BEEN A SLIGHT CHANGE IN

8  CIRCUMSTANCES WITH THE PASSAGE OF TIME.  WE'RE NOW TRYING TO

9  HAVE A TRIAL UNDER REASONABLE CONDITIONS AND, I THINK, FRANKLY,

10  WHAT GOVERNMENT OVERLOOKS IS, ALTHOUGH, THEY MAY HAVE ASSETS,

11  MR. PRILIK AND MR. BEKER HAVE LARGELY NOT BEEN ABLE TO WORK.

12      MR. PRILIK HAS BEEN LIVING IN SAN FRANCISCO, WHICH IS

13  NOT A CHEAP PLACE TO LIVE, EARNING ALMOST NO INCOME AND

14  POSSIBLY NO INCOME.

15      AND SO, I THINK, IF ANYTHING, IF YOU WERE TO EXAMINE

16  HIS ASSETS WHAT YOU WOULD SEE IS SOMEBODY IN WORSE CONDITION

17  THAN HE WAS AT THE TIME OF THE ORIGINAL BAIL DETERMINATION.

18      I THINK $650,000 TALKING ABOUT CANADA WE'RE NOT

19  TALKING ABOUT THE MALAYSIA WHERE YOU MIGHT REALLY HAVE TROUBLE

20  HAVING COOPERATION FROM THE GOVERNMENT RETURNING THESE TWO

21  INDIVIDUALS.

22      THE CANADIAN AUTHORITIES HAVE ALREADY DEALT WITH THESE

23  TWO INDIVIDUALS, THEY HAVE COUNSEL IN CANADA, VERY ESTEEMED,

24  RECOGNIZED, RESPECTED COUNSEL IN CANADA WHO WILL TAKE CONTROL

25  OF THE CANADIAN PASSPORTS WHILE THEY'RE THERE.

1      AND, I THINK, THE SECURITY IS MORE THAN ADEQUATE

2   ESPECIALLY GIVEN THEIR DEVOTION TO BEING HERE AND THEIR

3   DEVOTION TO PARTICIPATING IN THE CASE.  MR. BEKER AND MR.

4   PRILIK WITH US ALL THE TIME, THEY PROCEED BY HAVING INVOLVEMENT

5   IN THE CASE, HE WORKS ON THIS CASE EVERYDAY.

6      **MR. OSTERHOUDT:**  THEY DO BELIEVE IN THEIR CASES, THEY

7   DON'T BELIEVE IN THEIR CASES.

8      **MR. WARD:**  THEY WORK ON IT EVERY DAY BECAUSE THEY'RE

9   HERE EVERYDAY.  I DON'T -- IT'S NOT A DEVOTION TO THE UNITED

10  STATES OR TO THIS CASE PER SE, IT'S BECAUSE THE COURT HAS

11  ORDERED THEM TO BE HERE.

12      AND THE CONCERN THAT WE HAD IS THE SAME THEY HAD THEN,

13  THEY HAVE TIES TO THE FORMER SOVIET UNION.  MR. PRILIK FROM

14  MODALVO, HE'S LIVED IN ISRAEL, HE HAS AND MAINTAINS ISRAELI

15  CITIZENSHIP.  THE CONCERN TO THE COURT AND CONCERN TO US,

16  MR. BEKER IF I'M CORRECT WAS BORN IN MODALVO, BUT SPENT MANY

17  YEARS IN RUSSIA.

18      THE TAPES ARE ALL IN RUSSIAN.  THEY HAVE SIGNIFICANT

19  TIES NOT JUST TO CANADA, BUT TO OTHER PLACES IN THE WORLD.

20  NEWCON OPTICS DOES BUSINESS ALL OVER THE WORLD.  THEY HAVE,

21  ACCORDING TO THEIR WEBSITE, A DEALER NETWORK IN HOWEVER MANY

22  DIFFERENT COUNTRIES.

23      **THE COURT:**  BUT WE DO HAVE THE EXPERIENCE OF THEM

24  HAVING BEEN HERE FOR A LONG PERIOD OF TIME NOW, THEY HAVE

25  TRAVELED A NUMBER OF DIFFERENT PLACES, THEY CERTAINLY COULD

1    HAVE GONE BACK TO CANADA OR GONE SOMEWHERE ELSE, AND THAT

2    DOESN'T SEEM -- THEY, IN FACT, THEY HAVE GONE TO VERY CLOSE TO

3    THE CANADIAN BORDER AND CAME BACK.

4           **MR. HOWDEN:**  MR. BEKER CASE WITH HIS PASSPORT.

5           **MR. OSTERHOUDT:**  MR. PRILIK THEY ARE BORN IN MONDALVO,

6    LEFT THERE AT AGE OF 11, HE WAS RAISED AND EDUCATED IN ISRAEL.

7           **THE COURT:**  MOST PEOPLE WANT TO GO TO MONDALVO.

8           **MR. OSTERHOUDT:**  HE'S CANADIAN CITIZEN, HIS WIFE AND

9    CHILDREN HAVE LIVED THERE FOR MANY YEARS.  HE'S A CANADIAN, IS

10   WHAT HE IS, REGARDLESS OF THOSE THINGS.  HE DOESN'T HAVE A

11   CURRENT ISRAELI PASSPORT AT ALL.  YOU KNOW, I JUST THINK HE'S

12   EARNED THE COURT'S TRUST AND GOVERNMENT'S TRUST, TOO, JUST FOR

13   THIS PURPOSE.

14          **MR. HOWDEN:**  I DON'T WANT TO REHASH ALL OF MR. BEKER'S

15   TIES.

16          **THE COURT:**  HOW LONG IS IT GOING TO REALLY TAKE TO TRY

17   THE CASE, REALISTICALLY?

18          **MR. OSTERHOUDT:**  COMFORTABLY AND GET EVERYTHING IN, I

19   WOULD SAY, TEN TO TWELVE COURT DAYS.  MAYBE NOT QUITE THAT

20   LONG.

21          **MS. MOORMAN:**  WITH JURY SELECTION.

22          **MR. HOWDEN:**  I AGREE, THAT'S ASSUMING THAT DOOR

23   DOESN'T GET OPENED TO EXPERT TESTIMONY OR SOME OTHER COLLATERAL

24   ISSUE.  AT LEAST, WHAT APPEARS TO BE COLLATERAL AT THE MOMENT.

25          **MR. WARD:**  I THINK, YOU ALSO NEED TO ADD IN SOME TIME

```
1    FOR JURY DELIBERATION.

2              MS. MOORMAN:  THAT DOESN'T INCLUDE --

3              MR. WARD:  DO YOU DISAGREE?

4              MS. HAMILTON:  NO, I THINK, WE ALL AGREE.

5              MR. WARD:   TEN TO TWELVE PLUS PICKING THE JURY AND

6    JURY DELIBERATION.

7              MS. MOORMAN:  THE COURT'S BUSINESS GOES ON WHILE THE

8    JURY DELIBERATES.

9              MR. OSTERHOUDT:  ONE THING I WOULDN'T WELCOME IS FOR

10   THE COURT TO HAVE TO LEAVE WHILE THE JURY IS DELIBERATING,

11   BECAUSE SOMEBODY COULD TAKE THE VERDICT, BUT A QUESTION WILL

12   ARISE THE COURT BE IN A POSITION TO ANSWER THAT ANOTHER JUDGE

13   MIGHT NOT BE.

14             SO, OBVIOUSLY, IT IS IN OUR INTEREST TO HAVE YOUR

15   HONOR AVAILABLE DURING THE DELIBERATION PROCESS.

16             MS. HAMILTON:  GIVEN THE --

17             MR. OSTERHOUDT:  IN JANUARY MS. MOORMAN WILL HAVE TO

18   COME BACK IN JUDICIAL ROBES TO GIVE THE OPENING STATEMENT.  I'M

19   SURE YOU WOULDN'T MIND THAT.

20             MR. WARD:  YOU CAN WEAR THE ROBE WHILE YOU'RE GIVING

21   THE OPENING.

22             MS. HAMILTON:  THAT'S TOO PREJUDICIAL.

23             MR. WARD:  WE'LL STIPULATE TO THAT.

24             MS. MOORMAN:  WE HAVE OUR FIRST STIPULATION.  WE HEARD

25   IT HERE.
```

1          **THE COURT:**  WHEN DOES YOUR TERM START?

2          **MS. MOORMAN:**  4TH.

3          **THE COURT:**  THERE'S NO WAY, UNLESS WE STARTED IT NEXT

4     WEEK.

5          **MS. HAMILTON:**  WE HAVE WITNESSES COMING FROM, I'M NOT

6     SURE WE CAN GET OUR WITNESSES HERE IN TIME.

7          **THE COURT:**  BECAUSE WE'RE LOOKING AT PICKING A JURY,

8     EVEN CAME BACK THE FRIDAY AFTER ONE, TWO, THREE, FOUR, FIVE,

9     SIX, SEVEN, EIGHT, IT'S NOT GOING TO WORK.  JUST NOT GOING TO

10    WORK.

11          OKAY.  SO JANUARY YOUR CALENDARS ARE CLEAR, SO I DON'T

12    HAVE TO WORRY ABOUT ANYTHING ELSE.

13          **MR. WARD:**  I'M AVAILABLE AT ALL TIMES IN JANUARY.

14          **THE COURT:**  YOU DON'T HAVE ENOUGH TO DO, MR. WARD.

15    I'LL TALK TO MS. HAGUE ABOUT THAT.

16          **MR. WARD:**  I THINK, I'M ACTUALLY GOING TO HAVE QUITE A

17    BIT TO DO IN JANUARY.

18          **THE COURT:**  EITHER START ON THE 4TH OR THE 11TH?

19          **MS. HAMILTON:**  YOUR HONOR, ONE OF THE KIND OF THOUGHTS

20    I HAVE, WE HAVE A PRETRIAL CONFERENCE IN ORDER TO GET TO THE

21    JURY INSTRUCTIONS WHICH HAVEN'T BEEN SUBMITTED, MAKES SENSE, I

22    THINK, TO DO THAT IN JANUARY CLOSER TO THE TRIAL DATE, SO IT

23    WILL ALL BE FRESH AND KIND OF MOVE FORWARD FROM THERE.

24          **THE COURT:**  THAT'S PROBABLY TRUE.  HOW ABOUT IF WE

25    PRE-TRIED ON THE 5TH OR 6TH AND THEN COME BACK ON THE 11TH FOR

```
 1  TRIAL?

 2            MR. OSTERHOUDT:  THAT WOULD BE FINE WITH US.

 3            THE COURT:  ONE HOLIDAY IN THERE, IT'S A MONDAY, SO

 4  YOU'RE NOT GOING TO LOSE ANYTHING, I'LL JUST LOSE A DAY WHEN I

 5  DON'T HAVE TO LISTEN TO EXCITING MOTIONS.

 6            MR. OSTERHOUDT:  THEY ARE EXCITING.  WHAT TIME ON THE

 7  5TH, 2:30?

 8            THE COURT:  YEAH, 2:30.

 9            MR. HOWDEN:  DECIDE THE 5TH OR 6TH?

10            THE COURT:  I SAID 5TH OR 6TH, TAKE YOUR PICK.

11            MR. HOWDEN:  6TH.

12            THE COURT:  IS THAT ALL RIGHT FOR EVERYBODY?

13            MS. HAMILTON:  YES.

14            THE COURT:  THE 6TH AT 2:30.  NOW, WHAT YOU'RE GOING

15  TO HAVE TO DO IS WORK OUT SOME TERMS AND CONDITIONS FOR

16  RELEASE.  CAN YOU WORK OUT SOMETHING?

17            I WILL CHECK WITH PRETRIAL TONIGHT IF THEY'RE STILL

18  AROUND OR TOMORROW, BUT I'M ASSUMING WE'RE GOING TO HEAR

19  NOTHING NEGATIVE.

20            MR. OSTERHOUDT:  NO, YOU WON'T HEAR ANYTHING.

21            THE COURT:  OR ANYTHING NEGATIVE, EXCUSE ME, THAT WAS

22  A DOUBLE NEGATIVE, AND AT LEAST WE'VE HAD THE EXPERIENCE NOW

23  KNOWING THAT THEY WANDERED CLOSE TO THE BORDER AND HAVE

24  RETURNED, RIGHT?

25            AND I'M SURE WE'LL HAVE SET ON THE CALENDAR TO DEAL
```

WITH IT AND HAVE THEM FULLY UNDERSTAND, TO THE EXTENT THAT IT

GIVES ME SOME COMFORT, THEY WAIVE EXTRADITION, BUT I DON'T

THINK WE'RE GOING TO HAVE ANY PROBLEM WITH THAT.  AT LEAST, I

WOULD HOPE WE WOULDN'T.  BECAUSE, IF SO, I WILL SOCK IT TO

THEM.

          **MR. OSTERHOUDT:**  YOU'LL NEVER HAVE TO, MR. LIBBY IS

THE PRETRIAL OFFICER AND I HAPPEN TO KNOW FROM ANOTHER CASE HE

WON'T BE BACK UNTIL MONDAY.  HE'S OUT OF TOWN UNTIL THEN.

          **THE COURT:**  BUT I ASSUME HIS SUPERVISE CAN TAKE A LOOK

AT THEIR RECORDS TO SEE IF HE'S EXPRESSED ANY CONCERN AT ALL.

SO WE NEED TO PUT THIS, WHAT DO YOU WANT TO DO ABOUT THIS WHOLE

ISSUE OF THE RUSSIAN RECORDS?

          DO YOU WANT TO WAIT AND SEE IF YOU'RE ABLE TO GET

ANYTHING?

          **MR. HOWDEN:**  I DON'T THINK THERE'S ANY POINT IN

WAITING.  WE NEED TO GO FORWARD WITH THE FORMAL PROCESS AND

WE'LL HOPE, BUT IN THE MEANTIME I ALSO WANT TO PURSUE THIS

ALTERNATIVE BASIS FOR GETTING THEM.

          **THE COURT:**  LET'S SET A DATE FOR BRIEFING THAT AND

HAVING A HEARING BEFORE I LEAVE.  HOW SOON CAN YOU GET WHAT YOU

NEED TO GET IN WITH THE PROFFERS AND TO RELEVANCY, AS WELL AS

THE WHOLE ISSUE OF --

          **MR. HOWDEN:**  I LOVE TO HAVE NEXT WEEK TO DO IT, IF I

CAN.

          **THE CLERK:**  NOVEMBER 5TH.

```
1            THE COURT:  5TH AT 2:30.

2            MS. HAMILTON:  THAT WAS DEFENSE SUBMISSION.

3            THE COURT:  THEN HOW LONG TO RESPOND?  DO YOU WANT TO

4   RESPOND TO IT?

5            MS. HAMILTON:  YES, YOUR HONOR.

6            THE COURT:  HOW MUCH TIME DO YOU NEED TO RESPOND?

7            MS. HAMILTON:  NOVEMBER 17TH, THAT TAKES INTO ACCOUNT

8   THE HOLIDAYS.

9            THE COURT:  ONLY ONE HOLIDAY, ONE DAY.  YOU'RE NOT

10  GOING TO WORK ON THAT HOLIDAY, I'LL BE IN HERE.  GET IT IN BY

11  THE 12TH.

12           MS. HAMILTON:  YES.

13           THE COURT:  BY THE 12TH.

14           MR. OSTERHOUDT:  GOVERNMENT WILL GET IN THEIR --

15           THE COURT:  WE DON'T NEED A REPLY, DO WE?

16           YOU CAN ARGUE AT TIME OF THE HEARING AND PUT IT ON FOR

17  HEARING THE FOLLOWING WEEK, WHAT WOULD THAT BE?

18           THE CLERK:  DO YOU WANT ON A MONDAY?

19           THE COURT:  NO, MAYBE WHAT'S THE NEXT DAY?

20           THE CLERK:  THE 16TH OR 17TH?

21           MS. MOORMAN:  WE'RE ALREADY ON FOR THE 16TH.

22           THE COURT:  I NEED TO, WHEN DID I SAY TO GET YOUR

23  PAPERS IN?  FRIDAY THE?

24           MS. HAMILTON:  FRIDAY THE 12TH.

25           THE COURT:  WELL, I GUESS, THAT WILL GIVE US ENOUGH
```

1  TIME TO READ IT.  HOW ABOUT THE 17TH?

2          **MR. HOWDEN:**  THAT'S FINE.

3          **MR. OSTERHOUDT:**  WHAT TIME?

4          **THE COURT:**  2:30.  OKAY.

5          **MR. HOWDEN:**  VERY GOOD.

6          **THE COURT:**  COULD WE ALSO USE THAT DATE FOR DEALING

7  WITH THE RELEASE AND CONDITIONS AND SO FORTH AND SUBMIT A

8  PROPOSAL BY WHAT DAY, BY THE?

9          **MR. WARD:**  12TH.

10          **MR. OSTERHOUDT:**  PROPOSAL FOR RELEASE CONDITIONS.

11          **THE COURT:**  SEE IF YOU CAN AGREE ON MOST OF THAT.

12          **MR. OSTERHOUDT:**  I THINK SO, TOO.

13          **MR. WARD:**  OKAY.

14          **THE COURT:**  THE COUNTRY ISN'T GOING TO CAVE IN.  MAY

15  CAVE IN AS A RESULT OF NEXT TUESDAY.

16          **MR. HOWDEN:**  IF I COULD ASK ANOTHER ADMINISTRATIVE

17  MATTER, MY CLIENT WITHOUT HIS PASSPORT HAS TO HAVE ME SIGN HIM

18  IN EVERY TIME HE COMES IN THROUGH SECURITY DOWNSTAIRS.  I'M

19  WONDERING IF THERE'S ANYTHING THE COURT HAS ANY ABILITY TO

20  FACILITATE HIM COMING AND GOING OR NOT.  IF YOU DON'T.

21          **THE COURT:**  INTO THE BUILDING, RIGHT?

22          **MR. OSTERHOUDT:**  BOTH COUNSEL HOLDING THE PASSPORTS,

23  WE COULD BRING THEM, WE COULD GET PERMISSION TO BRING THEM FOR

24  THAT PURPOSE THAT DAY.

25          **THE COURT:**  THAT'S FINE.  THEY DON'T COME WANDERING IN

```
 1   HERE OTHERWISE.

 2          MR. HOWDEN:  THEY DON'T LIKE TO COME HERE JUST TO COME

 3   HERE.

 4          MR. OSTERHOUDT:  WE'RE BACK BEFORE YOUR HONOR ON THE?

 5          MS. HAMILTON:  I JUST GIVEN THAT, WE PUSH THE TRIAL

 6   DATE OUT, WE WOULD MOVE TO EXCLUDE TIME UNTIL.

 7          THE COURT:  IS THAT AGREEABLE?

 8          MR. HOWDEN:  YES.

 9          MR. OSTERHOUDT:  YES.

10          THE COURT:  CONTINUITY OF COUNSEL, CONTINUITY OF

11   JUDGE.

12          MS. HAMILTON:  THERE'S LETTERS ROGATORY OUT THERE,

13   THERE'S A SEPARATE --

14          THE COURT:  WELL, EFFECTIVE PREPARATION OF COUNSEL AND

15   FOR THE PENDING DISCOVERY THAT THEY'RE SEEKING FROM OVERSEAS.

16   PUT ALL THAT IN THERE.  OR CONTINUITY OF COUNSEL OR JUST

17   CONTINUITY.

18

19                 (PROCEEDINGS ADJOURNED.)

20

21

22

23

24

25
```

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 10TH DAY OF NOVEMBER, 2010.


/S/  JAMES YEOMANS

_____

JAMES YEOMANS, CSR, RPR